2000 Utah Ct. App. 86

**PROVO CITY, Plaintiff and Appellee,**

v.

**Scott A. WHATCOTT, Defendant and Appellant.**

No. 981642–CA.

Court of Appeals of Utah.

March 23, 2000.

Margaret P. Lindsay, Aldrich, Nelson, Weight & Esplin, and Thomas H. Means, Utah County Public Defenders Association, Provo, for Appellant.

Vernon F. Romney, Deputy City Atty., Provo, for Appellee.

Before JACKSON, Associate P.J., BILLINGS, and ORME, JJ.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 Scott A. Whatcott challenges his conviction for telephone harassment, a Class B misdemeanor in violation of Utah Code Ann. § 76–9–201 (1999). Because subsections (a) and (d) of the telephone harassment statute are unconstitutionally overbroad, we reverse Whatcott's conviction.

## BACKGROUND

¶ 2 "When reviewing a jury verdict, we examine the evidence and all reasonable inferences in a light most favorable to the verdict, reciting the facts accordingly. We present conflicting evidence only when necessary to understand issues raised on appeal." *State v. Heaps,* 2000 UT 5, ¶ 2, 999 P.2d 565 (citations omitted).

¶ 3 Whatcott admitted to placing a telephone call to the home of Anne Nielson and her roommate, Kathryn Convey. Nielson and Whatcott were friends, and Convey was acquainted with Whatcott. Whatcott left the

following message on their answering machine:

> I've got this boil on my testicle that just keeps oozing consistently and constantly and it's painful and it's red. It's either that or a third testicle. And I was wondering if like Kathy or Ann[e], if one of you could help me out here, if either one of you could like grab my crotch and just like fondle that third testicle of mine. It's just oozing all over the place, to get their hands kind of greasy. If you have any advice, please, give me a call. You know the number. Thanks. Bye.

¶ 4 At trial, Whatcott testified that Convey had often talked about her infected, oozing toenail, a boil on her breast, and other health problems. He said that his intent in making the call was to "play a prank" on Convey and to "parody" what he had heard her saying about her physical ailments. He described the phone call as a "sick kind of joke." Convey testified that the message shocked and offended her, and she referred to the message as obscene, lewd, and lascivious. Whatcott was convicted by a jury of one count of telephone harassment in violation of Utah Code Ann. § 76–9–201 (1999), as incorporated by Provo, Utah Code Ch. 9.40.010 (1999).

## ISSUES AND STANDARD OF REVIEW

¶ 5 Whatcott argues there was insufficient evidence to show that the telephone message was lewd, lascivious, or profane. Further, he contends the telephone harassment statute is unconstitutionally overbroad, both on its face and as applied, and is void for vagueness. A challenge to the constitutionality of a statute presents a question of law, which we review for correctness, according no deference to the trial court's ruling. *See Provo City Corp. v. Willden,* 768 P.2d 455, 456 (Utah 1989).

1. "[W]e assume, arguendo, the applicability of federal first amendment standing principles in Utah courts." *Logan City v. Huber,* 786 P.2d 1372, 1375 n. 10 (Utah Ct.App.1990). Because Whatcott is mounting a First Amendment challenge to the telephone harassment statute, he has standing to challenge it "on behalf of others not before the court even if the law could be constitutionally applied to" him, *Salt Lake City v. Lo-*

¶ 6 Because we conclude the telephone harassment statute is unconstitutionally overbroad, we need not reach Whatcott's challenge to the sufficiency of the evidence or his vagueness argument.

## ANALYSIS

¶ 7 Whatcott argues that section 76–9–201 is unconstitutionally overbroad, both on its face and as applied to him, and that it is void for vagueness.[1] We first consider Whatcott's overbreadth challenge. We need consider his vagueness challenge only if we conclude the statute is not unconstitutionally overbroad. *See Logan City v. Huber,* 786 P.2d 1372, 1375 (Utah Ct.App.1990).

¶ 8 A statute will be invalidated for overbreadth only if it " 'does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or the press.' " *Logan City,* 786 P.2d at 1375 (citation omitted). "[P]articularly where conduct and not merely speech is involved ... the overbreadth of a statute must not only be real, but substantial as well...." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973); *see State v. Haig,* 578 P.2d 837, 841 (Utah 1978). Further, a " 'statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction.' " *Haig,* 578 P.2d at 841 (Maughan, J., concurring in result) (quoting *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975)). As an overarching principle, we will construe a statute as constitutional whenever possible. *See State v. Mohi,* 901 P.2d 991, 1009 (Utah 1995).

¶ 9 The telephone harassment statute, section 76–9–201, provides:

*pez,* 935 P.2d 1259, 1263 n. 2 (Utah Ct.App. 1997), unless we are able to construe the statute in a manner that "will apply only to unprotected activity." *Provo City Corp. v. Willden,* 768 P.2d 455, 458 (Utah 1989). Because we cannot impose a limiting construction in this case, Whatcott has standing to challenge the statute both on its face and as applied to him.

(1) A person is guilty of telephone harassment and subject to prosecution in the jurisdiction where the telephone call originated or was received if with intent to annoy, alarm another, intimidate, offend, abuse, threaten, harass, or frighten any person at the called number or recklessly creating a risk thereof, the person:

(a) makes a telephone call, whether or not a conversation ensues;

(b) makes repeated telephone calls, whether or not a conversation ensues, or after having been told not to call back, causes the telephone of another to ring repeatedly or continuously;

(c) makes a telephone call and insults, taunts, or challenges the recipient of the telephone call or any person at the called number in a manner likely to provoke a violent or disorderly response;

(d) makes a telephone call and uses any lewd or profane language or suggests any lewd or lascivious act; or

(e) makes a telephone call and threatens to inflict injury, physical harm, or damage to any person or the property of any person.

(2) Telephone harassment is a class B misdemeanor.

Utah Code Ann. § 76–9–201 (1999).[2]

¶ 10 We acknowledge at the outset that the state has a legitimate interest in protecting the public from certain unreasonable telephone calls. Presumably, the Legislature intended to prohibit threatening and menacing calls, and calls that would provoke a breach of the peace. This is certainly within the Legislature's power, and does not offend the First Amendment.

¶ 11 But section 76–9–201 sweeps even more broadly. Under subsection (a), the statute prohibits any "telephone call, whether or not a conversation ensues," where the caller has "recklessly creat[ed] a risk" of "annoy[ing], alarm[ing] ..., intimidat[ing], offend[ing], abus[ing], threaten[ing], harass[ing], or frighten[ing]" the recipient. Id. Read thus, the statute would prohibit a potentially huge universe of otherwise legitimate telephone calls.

¶ 12 For example, unwanted telephone solicitations made to a private home during the dinner hour would be prohibited, as those calls surely risk annoying, offending, or harassing the recipients. Or, imagine a young adult who has recently moved out of the family home. To his exasperation (frequently and vocally expressed), his mother calls often to make sure he is alright. Under this statute, the worried mother's telephone calls—whether or not she actually conversed with or in fact annoyed him—could subject her to prosecution. Her conscious disregard of the substantial likelihood that the call would annoy her son would bring the call within the statute's ambit.

¶ 13 Subsection (d) is also problematic. For example, one could call a friend in a spirit of good fun, intending to play a joke on the friend.[3] At the very same time, one could also have the specific intent to annoy or offend the friend by using "lewd or profane language" or even by "suggest[ing] a[ ] lewd or lascivious act." Id. § 76–9–201(d). This lewd language, in fact, could be part and parcel of the joke. The specific intent to annoy or offend while telling a joke would bring the telephone call under the statute. One could also call a friend, intending to tell a lewd joke and assuming that the friend would not be offended—but nonetheless violate the statute because telling the joke created the reckless risk that the friend would take offense.

¶ 14 The potential overbreadth of the statute is not, of course, limited to the scenarios

---

**2.** The information charging Whatcott did not indicate under which subsection Whatcott was charged. Similarly, the jury was instructed to evaluate whether Whatcott's conduct satisfied *any* of the subsections, without specifying a particular one. Both Whatcott and the City contend that Whatcott's actions could fall only under subsections (a) or (d). We agree that the call would most logically fall under one of these subsections. Thus, we interpret Whatcott's appeal as a challenge to subsections (a) and (d) only, and we do not address the constitutionality of subsections (b), (c), or (e).

**3.** In fact, Whatcott's defense in this case is that he intended only to "play a prank, to have fun, give a joke." Puerile and offensive as the call may have been, it is nonetheless protected expression under the First Amendment.

posed above. Other legitimate telephone calls, made with a specific intent to annoy or offend the recipient, could include "a consumer calling the seller or producer of a product to express dissatisfaction of product performance, a businessman calling another to protest failure to perform a contractual obligation, a constituent calling his legislator to protest the legislator's stand on an issue, etc." *State v. Dronso*, 90 Wis.2d 110, 279 N.W.2d 710, 714 (Ct.App.1979). These few examples show that the overbreadth of subsections (a) and (d) is real and substantial, as they " ' "sweep[ ] within [their] ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech." ' " *Logan City*, 786 P.2d at 1375 (quoting *Waters v. McGuriman*, 656 F.Supp. 923, 925 (E.D.Pa.1987) (citation omitted)). Thus, we hold that subsections (a) and (d) of section 76–9–201 are unconstitutionally overbroad. *See State v. Lopes*, 1999 UT 24, ¶¶ 18, 20, 980 P.2d 191 (stating "if a portion of [a] statute might be saved by severing the part that is unconstitutional, such should be done[,]" so long as severance does not "destroy the purpose of the statute").

¶ 15 Our holding here should "not suggest that the first amendment gives one the unlimited right to annoy another, by speech or otherwise." *People v. Klick*, 66 Ill.2d 269, 5 Ill.Dec. 858, 362 N.E.2d 329, 331 (1977). However, the First Amendment does not prohibit the kind of essentially harmless communications described above. Simply put, "[t]he First Amendment is made of sterner stuff." *Bolles v. People*, 189 Colo. 394, 541 P.2d 80, 83 (1975).

## CONCLUSION

¶ 16 Subsections (a) and (d) of the telephone harassment statute, section 76–9–201 of the Utah Code, are unconstitutionally overbroad both facially and as applied. We thus reverse Whatcott's conviction. Because of our disposition, we do not reach Whatcott's arguments that insufficient evidence supported his conviction and that the statute is also unconstitutionally vague.

¶ 17 Reversed.

¶ 18 WE CONCUR: JUDITH M. BILLINGS, Judge, and GREGORY K. ORME, Judge.