2002 UT App 63

**PROVO CITY, Plaintiff and Appellee,**

v.

**Sean G. THOMPSON, Defendant and Appellant.**

No. 20000071–CA.

Court of Appeals of Utah.

March 7, 2002.

Dana M. Facemyer, Provo, for appellant.

Vernon F. Romney, Provo City Attorney's Office, Provo, for appellee.

Before Judges JACKSON, GREENWOOD, and ORME.

## OPINION

ORME, Judge.

¶ 1 Defendant Sean G. Thompson appeals from a bench trial conviction of telephone harassment, a class B misdemeanor, in violation of Utah Code Ann. § 76–9–201 (1999), as adopted by Provo City. Defendant argues that section 76–9–201 is both unconstitutionally overbroad and unconstitutionally vague. He also argues that he received ineffective assistance of counsel. We conclude that portions of section 76–9–201 are indeed facially overbroad. However, we affirm defendant's conviction because we conclude that the portion of subsection 76–9–201(1)(b) most applicable to defendant's actions is neither facially overbroad nor void for vagueness, and because we find no merit in defendant's ineffective assistance claim.

## BACKGROUND

¶ 2 "When reviewing a bench trial, '[w]e recite the facts from the record most favorable to the findings of the trial court.'" *State v. Layman,* 953 P.2d 782, 784 n. 1 (Utah Ct.App.1998) (quoting *State v. Moosman,* 794 P.2d 474, 476 (Utah 1990)). "We present conflicting evidence only when necessary to understand issues raised on appeal." *State v. Kruger,* 2000 UT 60, ¶ 2, 6 P.3d 1116.

¶ 3 In early May 1999, defendant's ex-wife, Carolyn, and their five-month-old daughter lived alone in an apartment in Provo City. During the late evening of May 1, and the

early morning of May 2, 1999, defendant phoned Carolyn ten times within the space of an hour. Carolyn told defendant two or three times that his calls were frightening her and asked him to quit calling. When defendant continued to call, Carolyn phoned the police.

¶ 4 Officer Bastian arrived at Carolyn's apartment at 12:47 a.m. and observed that Carolyn was "nervous, emotional, [and] appeared kind of scared." She told Officer Bastian that defendant "had been calling her and upsetting her by his frequent phone calls and [that] she just wanted him to stop." As Officer Bastian spoke with Carolyn, the phone in her apartment rang again. The phone's caller identification function indicated that the call was from defendant, bringing his total calls to eleven within the hour.

¶ 5 Officer Bastian answered the phone and asked who was calling. Defendant identified himself. Officer Bastian told defendant not to leave his apartment because he, Officer Bastian, would soon be arriving. Officer Bastian then went to defendant's apartment and cited defendant for telephone harassment.

¶ 6 Defendant claimed at trial that Carolyn initiated the first telephone call and expressed suicidal intentions. Defendant said he had "learned in school and from counselors and therapists" that "whenever you're faced with a situation where you're talking with somebody who ... is threatening to commit suicide ..., as soon as they hang up you immediately call them back to get them on the line ... and keep talking to them, and if they hang up, call back." Thus, he claimed, he did not call Carolyn repeatedly with any intent to annoy her, but only out of concern for her safety.

¶ 7 Defendant failed, however, to mention any of his concerns for Carolyn's safety to Officer Bastian either when Officer Bastian first spoke to defendant on the telephone [1] or when Officer Bastian arrived at defendant's apartment. Instead, Officer Bastian testified that defendant admitted he had been drinking and that he had also taken antidepressant medication. Defendant testified that when Officer Bastian scolded him for drinking too much, he became concerned because Officer Bastian threatened to arrest him and simply forgot to mention his concerns for Carolyn.

¶ 8 Following a bench trial, defendant was found guilty of telephone harassment. Specifically, the trial court found that defendant made "a large number of telephone calls" to Carolyn; that "she asked the defendant not to make additional calls and yet he continued to do so"; and that defendant's "clear ... intent [was] to annoy." Defendant now appeals.

## ISSUES AND STANDARD OF REVIEW

■ ¶ 9 Defendant claims he received ineffective assistance of counsel. We generally will not review a claim of ineffective assistance of counsel on direct appeal unless the defendant is represented by new counsel on appeal and the record is adequate to review the defendant's claims. *See State v. Maestas,* 1999 UT 32, ¶ 20, 984 P.2d 376; *State v. Vessey,* 967 P.2d 960, 964–65 (Utah Ct.App. 1998). If these conditions are met, "we will review [ineffective assistance] claims as a matter of law." *Maestas,* 1999 UT 32 at ¶ 20, 984 P.2d 376. "To establish that he received ineffective assistance of counsel, [defendant] must show that his counsel 'rendered deficient performance which fell below an objective standard of reasonable professional judgment' and that 'counsel's deficient performance prejudiced him.'" *Id.* (quoting *State v. Chacon,* 962 P.2d 48, 50 (Utah 1998)).

■ ¶ 10 Defendant also argues that Utah Code Ann. § 76–9–201 (1999) violates the First Amendment of the United States Constitution [2] because it is unconstitutionally

---

1. It is inconceivable that if defendant were truly concerned for Carolyn's safety, his response to Officer Bastian's indication he was on his way to defendant's apartment would not have been something like: "No! You've got to stay with Carolyn. She may try to kill herself."

2. "[Defendant] also cites the free speech guarantees of the Utah Constitution, Utah Const. art. I, § 15. However, he makes no argument that the state provision should be interpreted any differently than the federal provision.... Therefore, we choose to confine our analysis to his arguments based on the first amendment."

overbroad on its face [3] and because it is void for vagueness. "A constitutional challenge to a statute presents a question of law, which we review for correctness. When addressing such a challenge, this court presumes that the statute is valid, and we resolve any reasonable doubts in favor of constitutionality." *State v. Lopes,* 1999 UT 24,¶ 6, 980 P.2d 191 (citation omitted).

### I.  Ineffective Assistance of Counsel

■ ¶ 11 We only briefly address defendant's ineffective assistance of counsel claims, which are unavailing. Defendant claims two deficiencies in his counsel's performance. First, he alleges that had counsel properly investigated, counsel would have found evidence that Carolyn had previously shown suicidal tendencies. Such evidence, he claims, would have bolstered defendant's testimony that he did not call repeatedly with intent to annoy but rather to prevent Carolyn from harming herself. However, there is nothing in the record identifying what evidence counsel may have found had he investigated further. Defendant states only in his brief that he "had evidence of a prior occasion in which [Carolyn] threatened to kill herself and all passengers ... who were with her while she was driving a car." However, defendant did not request a remand under Rule 23B of the Utah Rules of Appellate Procedure to substantiate the assertion he now argues would support his claim of ineffective assistance. Without a proper record before us, we are unable to say whether counsel's alleged deficiency in failing to investigate prejudiced defendant. *See State v. Vessey,* 967 P.2d 960, 964–65 & n. 5 (Utah Ct.App.1998).

■ ¶ 12 Defendant also claims counsel's performance was deficient in not drawing more attention to two contradictory statements made by Carolyn. On direct examination, Carolyn said she could not remember whether she had called defendant on

*Provo City v. Willden,* 768 P.2d 455, 456 n. 2 (Utah 1989).

**3.** Defendant makes only a facial overbreadth challenge to section 76–9–201 and does not argue that it is overly broad as applied to him. "In the First Amendment area, the overbreadth doctrine gives a defendant standing to challenge a

the day of the incident, but she said if she had, it was to ask him whether he wanted to come visit their daughter. On cross-examination, Carolyn admitted she had called defendant on the day of the incident, but again said her call was only to ask if he wanted to visit their daughter and that she had not expressed any intent to harm herself. "[I]n reviewing counsel's performance, we give trial counsel wide latitude in making tactical decisions and [do] not question those tactical decisions unless there is no reasonable basis supporting them." *State v. Maestas,* 1999 UT 32,¶ 20, 984 P.2d 376. Defense counsel might have considered that successfully impeaching Carolyn's testimony by drawing out the inconsistency was sufficient, and that to delve further into the subject might only have served to highlight the contrast between Carolyn's gracious encouragement of visitation and defendant's subsequent harassing behavior. Thus, we cannot say defense counsel's decision not to pursue the contradiction in Carolyn's testimony fell outside the wide latitude accorded trial counsel in making tactical decisions.

### II.  Constitutionality of Section 76–9–201

¶ 13 Defendant argues that Utah Code Ann. § 76–9–201 (1999) is unconstitutionally overbroad on its face and void for vagueness.

Faced with overbreadth and vagueness attacks on a statute or ordinance, our first task is to determine whether the enactment makes unlawful a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail and we should then examine the facial vagueness challenge. If it does, it may be held facially invalid even if it also has legitimate application.

*Logan City v. Huber,* 786 P.2d 1372, 1375 (Utah Ct.App.1990) (citations omitted).

¶ 14 At the time of the incident giving rise to this case, section 76–9–201 read:

statute on behalf of others not before the court even if the law could be constitutionally applied to the defendant." *Salt Lake City v. Lopez,* 935 P.2d 1259, 1263–64 n. 2 (Utah Ct.App.1997). *See Bigelow v. Virginia,* 421 U.S. 809, 814–17, 95 S.Ct. 2222, 2229–30, 44 L.Ed.2d 600 (1975).

(1) A person is guilty of telephone harassment and subject to prosecution in the jurisdiction where the telephone call originated or was received if with intent to annoy, alarm another, intimidate, offend, abuse, threaten, harass, or frighten any person at the called number or recklessly creating a risk thereof, the person:

(a) makes a telephone call, whether or not a conversation ensues;

(b) makes repeated telephone calls, whether or not a conversation ensues, or after having been told not to call back, causes the telephone of another to ring repeatedly or continuously;

(c) makes a telephone call and insults, taunts, or challenges the recipient of the telephone call or any person at the called number in a manner likely to provoke a violent or disorderly response;

(d) makes a telephone call and uses any lewd or profane language or suggests any lewd or lascivious act; or

(e) makes a telephone call and threatens to inflict injury, physical harm, or damage to any person or the property of any person.

(2) Telephone harassment is a class B misdemeanor.

Utah Code Ann. § 76–9–201 (1999).[4]

¶ 15 The information charging defendant with telephone harassment did not indicate under which subsection of Utah Code Ann. § 76–9–201 (1999) he was charged. The trial court's findings, however, support a guilty verdict only under subsections (a) and (b) of section 76–9–201. We therefore confine our analysis of section 76–9–201 to subsections (a) and (b); we do not address the constitutionality of the remaining subsections. *See Provo City v. Whatcott,* 2000 UT App 86, ¶ 9 n. 2, 1 P.3d 1113.

### A. Subsection (a)

¶ 16 In *Provo City v. Whatcott,* which was decided while this case was pending on appeal, we analyzed subsections (a) and (d) of section 76–9–201, concluding that each was unconstitutionally overbroad. *See id.* at ¶¶ 9 n. 2; 16. *Whatcott's* analysis of subsection (a) forecloses the need to revisit here the question of subsection (a)'s constitutionality. *See State v. Belgard,* 615 P.2d 1274, 1275–76 (Utah 1980) (holding that a defendant may claim the benefit of appellate decisions issued while the defendant's case is pending final judgment on appeal). Thus, we restate *Whatcott's* analysis of subsection (a) only as useful prelude to our similar analysis of subsection (b).

¶ 17 An enactment which is unconstitutionally overbroad "is one 'which does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or the press.'" *Logan City v. Huber,* 786 P.2d 1372, 1375 (Utah Ct.App.1990) (quoting *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741–42, 84 L.Ed. 1093 (1940)) (additional citation omitted). In *Whatcott* we said of section 76–9–201:

Presumably, the Legislature intended to prohibit threatening and menacing calls, and calls that would provoke a breach of the peace. This is certainly within the Legislature's power, and does not offend the First Amendment.

But section 76–9–201 sweeps even more broadly. Under subsection (a), the statute prohibits any "telephone call, whether or not a conversation ensues," where the caller has "recklessly creat[ed] a risk" of "annoy[ing], alarm[ing] . . . , intimidat[ing], offend[ing], abus[ing], threaten[ing], harass[ing], or frighten[ing]" the recipient. *Id.* Read thus, the statute would prohibit a potentially huge universe of otherwise legitimate telephone calls.

2000 UT App 86 at ¶¶ 10–11, 1 P.3d 1113.

¶ 18 We then gave five example categories of legitimate calls prohibited under subsec-

---

**4.** Section 76–9–201 has since been amended to delete subsections (a) and (d), which were invalidated in *Provo City v. Whatcott,* 2000 UT App 86, 1 P.3d 1113. *See* Utah Code Ann. § 76–9–201 (Supp.2001) (amendment notes). Former subsections (b), (c), and (e) are now codified, with minor stylistic changes, as subsections (a), (b), and (c), respectively. *See id.* In this opinion, unless stated otherwise, we refer to each subsection as it appeared in the code version in effect at the time of the incident giving rise to this case.

tion (a): (1) "unwanted telephone solicitations made to a private home during the dinner hour"; (2) calls from a mother to "a young adult who has recently moved out of the family home," which the mother makes in order "to make sure he is alright," and which she continues to make despite "his exasperation (frequently and vocally expressed)"; (3) calls from " 'a consumer ... [to] the seller or producer of a product to express dissatisfaction of product performance' "; (4) calls from " 'a businessman ... [to] another to protest failure to perform a contractual obligation' "; and (5) calls from " 'a constituent ... [to] his legislator to protest the legislator's stand on an issue.' " *Id.* at ¶¶ 12, 14 (quoting *State v. Dronso,* 90 Wis.2d 110, 279 N.W.2d 710, 714 (App.1979)). Each of these calls would be prohibited because of the callers' "conscious disregard of the substantial likelihood that the call would annoy [the recipient and thus] bring the call within the statute's ambit." *Id.* at ¶ 12, 279 N.W.2d 710. "These few examples show that the overbreadth of subsection[ ](a) ... is real and substantial." *Id.* at ¶ 14, 279 N.W.2d 710. Thus, if defendant's conviction were based solely on subsection (a), we would be constrained to reverse.

### B. Subsection (b)

¶ 19 We now turn to an analysis of subsection (b). Subsection (b) contains two parts. The first prohibits the "mak[ing of] repeated telephone calls, whether or not a conversation ensues," if the caller acts with the requisite intent, i.e., "with intent to annoy, alarm another, intimidate, offend, abuse, threaten, harass, or frighten any person at the called number or recklessly creat[es] a risk thereof." Utah Code Ann. § 76–9–201(1)(b) (1999). The second prohibits the "caus[ing of] the telephone of another to ring repeatedly or continuously" if the caller "ha[s] been told not to call back," and if the caller acts with the requisite intent. *Id.* We discuss each of subsection (b)'s prohibitions separately.

#### 1. Repeated Calling

¶ 20 Subsection (a) prohibits "a [*single*] telephone call, whether or not a conversation ensues," if made with the requisite

intent. Utah Code Ann. § 76–9–201(1)(a) (1999). The first part of subsection (b) criminalizes "*repeated* telephone calls, whether or not a conversation ensues," if made with the requisite intent. *Id.* § 76–9–201(1)(b) (emphasis added). Prohibiting repeated calls rather than only single calls does little to narrow the field of otherwise legitimate communications that subsection (a) unconstitutionally " 'sweeps within its ambit.' " *Huber,* 786 P.2d at 1375 (citation omitted).

¶ 21 In other words, tracking the examples set out in *Whatcott,* the telephone solicitor who attempts to call again "at a more convenient time"; the overly anxious mother who calls her grown son repeatedly despite his expressed exasperation; the consumer who calls customer service the first, second, third, and fourth times her computer crashes; the businessman who leaves a voice mail message for his counterpart at another company regarding an unperformed contractual term, then calls again later to speak in person, and then calls a third time—or twenty times—to "keep the pressure on"; and the concerned citizen who calls on different occasions to chastize his legislator for her stance on varied issues might all be subject to prosecution under the first part of subsection (b), as well as under subsection (a). Again, it is the callers' "conscious disregard of the substantial likelihood that the [repeated] call[s] would annoy [the recipient that] bring[s] the call within the statute's ambit." *Whatcott,* 2000 UT App 86 at ¶ 12, 1 P.3d 1113. Because both the first and repeat calls in the above scenarios are legitimate, we hold that the first part of subsection (b) is also facially overbroad and unconstitutional. If defendant's conduct had fit solely under the first part of subsection (b), we would, again, be constrained to reverse.

#### 2. Repeatedly Calling After a Request to Discontinue

¶ 22 The trial court's findings, however, clearly support defendant's conviction for telephone harassment under the second part of subsection (b). The second part of subsection (b) prohibits "caus[ing] the telephone of another to ring repeatedly or continuously" when one has "been told not to call back,"

and when one acts with the requisite intent. Utah Code Ann. § 76–9–201(1)(b) (1999). The trial court found that defendant made "a large number of telephone calls" to Carolyn; that "she asked the defendant not to make additional calls and yet he continued to do so"; and that defendant's "clear ... intent [was] to annoy."

¶ 23 In order to conclude that a statute is unconstitutionally overbroad "where conduct and not merely speech is involved ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). We conclude that, unlike subsection (a) and the first part of subsection (b), any possible overbreadth in the second part of subsection (b) is not substantial.

¶ 24 The distinguishing feature of the second part of subsection (b) is that to be prosecuted under it, one must "*hav[e] been told not to call back*" and yet, with the requisite intent, nevertheless then "causes the telephone of another to ring repeatedly or continuously." Utah Code Ann. § 76–9–201(1)(b) (1999) (emphasis added). "The right of free speech is guaranteed every citizen that he may reach the minds of *willing* listeners and to do so there must be opportunity to win their attention." *Kovacs v. Cooper*, 336 U.S. 77, 87, 69 S.Ct. 448, 454, 93 L.Ed. 513 (1949) (emphasis added). Clearly, there is no right to audibly invade another's home or place of business by telephone ring in an attempt to commandeer her listening ear when she has affirmatively expressed a desire to be left alone. *Cf. id.* at 87–88, 69 S.Ct. at 454 ("Opportunity to gain the public's ears by objectionably amplified sound on the streets is no more assured by the right of free speech than is the unlimited opportunity

to address gatherings on the streets."). We see no substantial overbreadth in the second part of subsection (b)'s prohibition.[5]

¶ 25 Defendant also argues that the intent requirement of section 76–9–201 is unconstitutionally vague. A statute is unconstitutionally vague if persons " 'of common intelligence must necessarily guess at its meaning and differ as to its application.' " *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). We do not believe that persons of common intelligence must guess at whether, after having been told not to call again, causing the telephone of another to ring repeatedly or continuously will create a risk of annoying, alarming, intimidating, offending, abusing, threatening, harassing, or frightening the other person. *See* Utah Code Ann. § 76–9–201 (1999). It most assuredly will. We thus see no unconstitutional vagueness in the intent requirement of section 76–9–201 as applied to the second part of subsection (b).

¶ 26 Because the undisputed findings of the trial court place defendant's conduct squarely within the prohibitions of the second part of Utah Code Ann. § 76–9–201(1)(b), which we hold to be constitutional, we affirm defendant's conviction under that portion of the subsection.

## CONCLUSION

¶ 27 We follow our decision in *Whatcott* that Utah Code Ann. § 76–9–201(1)(a) (1999) is unconstitutionally overbroad on its face. We also conclude that the first part of section 76–9–201(1)(b) is also unconstitutionally overbroad on its face. However, we determine that the second part of subsection 76–9–201(1)(b),[6] prohibiting one from, "after hav-

---

**5.** Because of our previous reliance on several examples, we must recognize that the examples of consumers calling customer service, businessmen calling each other regarding contractual terms, and constituents seeking redress of grievances by calling their legislators pose the closer question as to the possible overbreadth of the second part of subsection (b). However, (1) because consumers, businessmen, and constituents each may make initial contact by telephone with producers, fellow businessmen, and legislators,

respectively and (2) because further recourse may be pursued through correspondence if the caller is told not to call again, we conclude that the prohibitions in the second part of subsection (b) are not beyond the bounds of constitutionality.

**6.** As previously indicated, Utah Code Ann. § 76–9–201(1)(b) (1999) is now codified as Utah Code Ann. § 76–9–201(1)(a) (Supp.2001).

ing been told not to call back, caus[ing] the telephone of another to ring repeatedly or continuously," when done with culpable intent, is not unconstitutionally overbroad. Nor is the intent requirement of section 76–9–201 unconstitutionally vague in the context of the second part of subsection (b).

¶ 28 As defendant's ineffective assistance claim fails, and because his conduct fits squarely within the prohibition contained in the second part of subsection (b), we affirm his conviction for telephone harassment.

¶ 29 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and PAMELA T. GREENWOOD, Judge.