2004 UT 14

**PROVO CITY CORPORATION,**
**Plaintiff and Appellant,**

v.

**Sean THOMPSON, Defendant**
**and Appellee.**

No. 20020307.

Supreme Court of Utah.

Feb. 13, 2004.

Vernon F. Romney, Provo, for plaintiff.

Dana M. Facemyer, Provo, for defendant.

DURHAM, Chief Justice:

## BACKGROUND

¶ 1 Defendant Sean S. Thompson was convicted under Utah Code section 76–9–201 for making repeated calls to his ex-wife, Carolyn, after she previously told him not to call back. The trial court found that the defendant telephoned Carolyn late at night eleven times within a one-hour time period. Carolyn told the defendant not to call several times that night, but the defendant continued his calls. As a result, Carolyn finally called the Provo City Police Department, and Officer Michael Bastian was dispatched to Carolyn's house. While Officer Bastian was at her house, the defendant called again. Officer Bastian answered the line, learned the defendant's location, and advised the defendant to remain where he was. Officer Bastian then went to Thompson's apartment, where he found Thompson in an intoxicated state, and cited him for telephone harassment.

¶ 2 At trial, Thompson's defense was that he had been calling to prevent Carolyn from killing herself, which he claimed she said she would do in a phone call she made to him earlier that night. However, the defendant admitted that he did not raise those concerns with Officer Bastian. Rather, according to Officer Bastian, he explained that he had been calling to find out whether his wife still loved him and because he wanted to see his daughter. The trial court found the defendant guilty of telephone harassment because, in violation of section 76–9–201(1)(b), the defendant had made repeated telephone calls with the intent to annoy Carolyn after she had asked him not to call.

¶ 3 On appeal, defendant challenged his conviction, arguing that section 76–9–201 was unconstitutionally overbroad and void for vagueness in violation of the First Amendment to the United States Constitution and the Utah Constitution. *Provo City v. Thompson*, 2002 UT App 63, ¶ 1, 44 P.3d 828. The court of appeals affirmed his conviction, holding that the portion of section 76–9–201(1)(b) that was most applicable to defendant's conduct was neither unconstitutionally overbroad nor void for vagueness. *Id.* at ¶ 23. The court did, however, hold that first portion of 76–9–201(1)(b) unconstitutionally overbroad and therefore invalid. *Id.* at ¶ 21. We granted Provo City's petition for review of the decision of the court of appeals insofar as it declared the first portion of Utah Code section 76–9–201(1)(b) unconstitutionally overbroad. *Id.*

¶ 4 The court of appeals' affirmance of defendant's conviction of telephone harassment under the unwanted calls provision of Utah Code section 76–9–201(1)(b) was correct. We also hold that the court of appeals improperly reached the issue of whether the first portion of 76–9–201(1)(b) is facially overbroad.

## STANDARD OF REVIEW

¶ 5 Constitutional challenges to statutes present questions of law, which we review for correctness. *Midvale City Corp. v. Haltom*, 2003 UT 26, ¶ 10, 73 P.3d 334; *I.M.L. v. State*, 2002 UT 110, ¶ 8, 61 P.3d 1038.

## ANALYSIS

¶ 6 At the time of the incident giving rise to this case, Utah Code section 76–9–201 read as follows:

(1) A person is guilty of telephone harassment and subject to prosecution in the jurisdiction where the telephone call originated or was received if with intent to annoy, alarm another, intimidate, offend, abuse, threaten, harass, or frighten any person at the called number or recklessly creating a risk thereof, the person:

    (a) makes a telephone call, whether or not a conversation ensues;

    (b) makes repeated telephone calls, whether or not a conversation ensues, or after having been told not to call back, causes the telephone of another to ring repeatedly or continuously;

    (c) makes a telephone call and insults, taunts, or challenges the recipient of the telephone call or any person at the called number in a manner likely to provoke a violent or disorderly response;

(d) makes a telephone call and uses any lewd or profane language or suggests any lewd or lascivious act; or

(e) makes a telephone call and threatens to inflict injury, physical harm, or damage to any person or the property of any person.

(2) Telephone harassment is a class B misdemeanor.

Utah Code Ann. § 76–9–201 (1999) (current version at Utah Code Ann. § 76–9–201 (2003)).

¶ 7 At issue here is subsection (1)(b). Defendant's conviction was sustained under the second portion of subsection (1)(b), which prohibits a person with the requisite intent from making repeated telephone calls after being told not to call. For clarity of reference, we will refer to this portion as the unwanted calls provision. The court of appeals invalidated the first portion of subsection (1)(b), which prohibits a person with the requisite intent from making repeated telephone calls, whether or not a conversation ensues. We designate this portion the repeated call provision. Provo City now asks us to hold that the repeated call provision is not facially overbroad.

## I. STANDING

¶ 8 Before we reach the merits of Provo City's argument, we must first decide whether the constitutional validity of the repeated calls provision was properly before the court of appeals. *See Salt Lake City Corp. v. Prop. Tax Div. of Utah State Tax Comm'n,* 1999 UT 41, ¶ 9, 979 P.2d 346 (treating standing as a threshold issue that must be determined before proceeding to further inquiries).

### A. Basic Standing Requirements

¶ 9 To properly bring an issue before the court for adjudication, a party must have standing. "In essence[,] the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In order to meet the basic requirements of standing, a party must allege that he or she has suffered or will imminently suffer an injury that is fairly traceable to the conduct at issue such that a favorable decision is likely to redress the injury. *See Jenkins v. Swan,* 675 P.2d 1145, 1150–51 (Utah 1983) (discussing three alternative ways to fulfill the requirements of standing). In addition, a party may generally assert only his or her own rights and cannot raise the claims of third parties who are not before the court. *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *State v. Herrera,* 1999 UT 64, ¶ 42, 993 P.2d 854 ("We have long held that 'one may not allege jeopardy or injury to others in order to confer standing upon his own claims.' " (quoting *York v. Unqualified Wash. County Elected Officials,* 714 P.2d 679, 680 (Utah 1986))).

### B. Facial Overbreadth as an Exception to Traditional Standing Requirements

¶ 10 When a challenge of statutory overbreadth is made, an exception to the basic standing requirements is available in the First Amendment context. "The First Amendment overbreadth doctrine ... represents a departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court." *State v. Haig,* 578 P.2d 837, 841 (Utah 1978) (citation omitted). The facial overbreadth doctrine "gives a defendant standing to challenge a statute on behalf of others not before the court even if the law could be constitutionally applied to the defendant." *Salt Lake City v. Lopez,* 935 P.2d 1259, 1263 n. 2 (Utah Ct.App.1997); *see also Virginia v. Hicks,* 539 U.S. 113, 123 S.Ct. 2191, 2196, 156 L.Ed.2d 148 (2003); *Bigelow v. Virginia,* 421 U.S. 809, 815, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Broadrick,* 413 U.S. at 612, 93 S.Ct. 2908 ("[T]he Court has altered its traditional rules of standing to permit—in the First Amendment area—attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' " (quoting *Dombrowski v. Pfister,* 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965))). Because this

doctrine is "strong medicine," it should only be applied sparingly and as a last resort. *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999) (citation omitted).

■ ¶ 11 The rationale for the facial overbreadth doctrine rests on the very real possibility that an overbroad statute will cause injury not only when applied to punish protected speech, but also in its "chilling effect" on protected activity. Individuals who are contemplating participating in protected speech may choose to avoid possible prosecution or litigation by refraining from the constitutionally protected activity. *See Provo City Corp. v. Willden*, 768 P.2d 455, 457 (Utah 1989). Because these individuals are never prosecuted, the overbroad statute goes unchallenged. To remedy this situation, a party may challenge a statute on the basis that it criminalizes protected speech even though that party's own conduct or speech is not constitutionally protected. *I.M.L.*, 2002 UT 110 at ¶ 7, 61 P.3d 1038. The court may then invalidate the statute if (1) the statute " 'reaches a substantial amount of constitutionally protected conduct,' " even if the statute also has a legitimate application, *id.* at ¶ 15 (quoting *Houston v. Hill*, 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)), and (2) the statute is not "readily subject to a narrowing construction." *State v. Jordan*, 665 P.2d 1280, 1284 (Utah 1983) (citing *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975)).

■ ¶ 12 This exception, however, does not relieve the burden of the challenging party to meet the other requirements for standing. To have standing in the context of a facial overbreadth challenge, "a party must still 'demonstrate its own cognizable injury in fact.' " *Haltom*, 2003 UT 26 at ¶ 84, 73 P.3d 334, (Durrant, J., concurring) (quoting *Z.J. Gifts D–4, L.L.C. v. City of Littleton*, 311 F.3d 1220, 1227 (10th Cir.2002)). The injury-in-fact requirement is satisfied where a party participates "in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution." *Id.* (internal quotation omitted). The party challenging a statute must also show that if the court invalidates the challenged provision, the party's harm will be redressed. *See Bigelow*, 421 U.S. at 816–17, 95 S.Ct. 2222 (finding that defendant had standing to raise a facial overbreadth challenge to a statute where there was "no doubt concerning the [defendant's] personal stake in the outcome of the controversy.").

■ ¶ 13 As a corollary, "[t]he rule still stands that where defendants were not charged with an activity, the adjudication of that activity, though encompassed under the sanctions of the statute, must await a real controversy." *Jordan*, 665 P.2d at 1284. The overbreadth doctrine, therefore, cannot be properly relied upon to invalidate a portion of a statute under which a defendant has not been charged or convicted: " 'When a line of excision is available, one standing within the zone which a truncated statute might reach may be barred from setting up the statute's overbreadth as to others.' " *Id.* (quoting Note, *The First Amendment Overbreadth Doctrine*, 83 Harv. L.Rev. 844, 909 (1970)).

¶ 14 We are aware of no case in which a court, in response to a facial overbreadth challenge to a statute, has found invalid a portion inapplicable to the defendant but nonetheless affirmed the defendant's conviction based on a different, valid portion of the statute. Neither are we aware of any case in which a court employs one of two statutory provisions, both of which proscribe the conduct at issue, to uphold a conviction while the other is declared invalid.

■ ¶ 15 Rather, courts entertain facial overbreadth challenges only where the outcome of the case rests on the court's determination of the constitutionality of the applicable portion of the statute. *See Provo City v. Whatcott*, 2000 UT App 86, ¶ 14, 1 P.3d 1113 (finding both portions of statute under which defendant could have been convicted overbroad and therefore reversing defendant's conviction); *Logan City v. Huber*, 786 P.2d 1372 (Utah Ct.App.1990) (finding portion of the statute under which defendant was convicted overbroad and reversing conviction); *American Fork City v. Pena–Flores*, 2002

UT 131, 63 P.3d 675 (upholding defendant's conviction because the relevant portion of the statute was not overbroad or constitutionally deficient); *Jordan*, 665 P.2d at 1280 (dismissing defendant's challenge of portion of statute where a different, constitutionally valid portion of the statute was sufficient to uphold defendant's conviction).

¶ 16 Thus, in *Whatcott*, the court properly applied the facial overbreadth exception to the normal requirements of standing to analyze the two portions of the statute under which the defendant could have been convicted. 2000 UT App at ¶ 9 n. 2, 1 P.3d 1113. However, unlike the present case, the court in *Whatcott* found both portions of the statute constitutionally invalid and therefore reversed defendant's conviction. *Id.* at ¶ 16.

¶ 17 *Jordan* presented a similar situation. There, defendants were convicted under a portion of the statute prohibiting inducing a minor to pose in the nude *for the purpose of sexual arousal. Jordan*, 665 P.2d at 1283. The court held that defendants could not challenge the statute's constitutionality based on the alleged overbreadth of another portion of the same subsection that prohibited inducing minors to pose in the nude *for profit. Id.* at 1284. The court held that "[the defendants] cannot rely upon the [overbreadth] exception to test that proscribed conduct as it affects others." *Id.* Because one valid portion of the statute proscribed defendants' conduct, the court did not address the constitutionality of another portion of the statute, and sustained defendants' convictions. *Id.*

¶ 18 As the cases above illustrate, a defendant may only challenge multiple portions of a statute if invalidating each of the challenged portions would be necessary to find that defendant's conduct fell outside the statute's proscriptions. If a finding that one portion is valid will suffice to uphold a conviction, a defendant lacks standing to challenge, and a court cannot properly adjudicate, the constitutionality of another portion of the statute. Essentially, a court may not issue an advisory opinion as to a statutory provision unnecessary to the outcome of the case because it is one that the parties do not have standing to litigate.

## II. APPLICATION

¶ 19 In the court of appeals, defendant raised a general facial overbreadth challenge to section 76–9–201 even though the statute was not overly broad as applied to him. *Thompson*, 2002 UT App 63 at ¶ 10 n. 3, 44 P.3d 828. As discussed above, defendant had standing only to challenge the validity of the provisions applicable to him, which were the repeated calls and unwanted calls provisions of subsection 76–9–201(1)(b). As to those portions of the statute, the defendant had standing to raise the overbreadth defense because he arguably had been convicted under provisions that he claimed were invalid, and a decision invalidating those provisions would redress his injury. *See Willden*, 768 P.2d at 457 ("There is no question that *Willden* meets this standing test. He has been convicted and sentenced under the ordinance he challenges."). Even though defendant did not argue that any provision was unconstitutionally broad as applied to his own conduct, and was therefore asserting the rights of parties not before the court, the facial overbreadth doctrine provided an exception to the general prohibition against the assertion of third-party rights.

¶ 20 The court of appeals found that the particular provision most applicable to the defendant's conduct, the unwanted calls provision of 76–9–201(1)(b), was not overbroad because "there is no right to audibly invade another's home or place of business by telephone ring in an attempt to commandeer her listening ear when she has affirmatively expressed a desire to be left alone." *Thompson*, 2002 UT App 63 at ¶ 24, 44 P.3d 828. Accordingly, because defendant's conduct fell within the conduct proscribed by the unwanted calls provision, the court affirmed defendant's conviction. Defendant does not now challenge this ruling. (When asked at oral argument before this court whether he was seeking to overturn his client's conviction, defense counsel replied "I'm not now asserting that position.").

¶ 21 Once the court of appeals upheld the unwanted calls provision, it should have held that defendant had no standing to challenge the constitutionality of the repeated calls provision. First, he could not and did not claim

that he had suffered injury as a result of the implementation of the repeated calls provision. Second, and most notably, any injury the defendant could have alleged would not be redressed by a favorable decision: regardless of the court's decision as to the repeated calls provision, defendant's conviction would stand under the unwanted calls provision, which the court found to be valid. As a result, the issue of whether the repeated calls provision was valid was no longer properly before the court once it had determined that defendant's conviction was supported by a different, valid portion of the statute. As in *Jordan*, 665 P.2d 1280, even though both of the provisions prohibit defendant's conduct, a finding that one of those provisions was constitutional is sufficient to resolve the issues before the court. Any discussion of an alternate provision under which defendant might have been convicted was unnecessary to the outcome of the case.

¶ 22 This lack of meaningful effect to the parties in this case renders the court of appeals' decision as to the repeated calls provision advisory in nature. We have observed on many occasions that this court is not inclined "to issue mere advisory opinions." *Miller v. Weaver*, 2003 UT 12, ¶ 26, 66 P.3d 592; *see also Lyon v. Bateman*, 119 Utah 434, 228 P.2d 818, 820 (Utah 1951) ("[C]ourts ... must operate within the constitutional and statutory powers and duties imposed upon them. They are not supposed to be a forum for hearing academic contentions or rendering advisory opinions.").

¶ 23 The soundness of this doctrine is illustrated by the strange posture in which the parties, their counsel, and this court find themselves as a result of the court of appeals' application of the overbreadth exception to standing requirements. After the court of appeals affirmed his conviction, defendant chose not to appeal that ruling. Instead, Provo City has now appealed the invalidation of the repeated calls provision. Defendant also faces an awkward situation. Because he has not appealed his conviction, he is limited to arguing for the invalidation of the repeated calls provision with no real incentive to litigate the issue.

¶ 24 If a defendant declines to litigate an issue under these circumstances, this court cannot benefit from the virtues of an advocate-based system of justice in which each party's counsel brings all the significant competing arguments to the court's attention. If defendant instead chooses to litigate the matter, he cannot "reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal," because the court's ultimate decision will not affect him. *Haltom*, 2003 UT 26 at ¶ 86, 73 P.3d 334. Finally, if defendant declines to continue litigating but his counsel feels compelled to respond to the plaintiff's arguments, an anomalous situation arises: defense counsel represents no client and only litigates the matter out of a sense of obligation or personal satisfaction. Consequently, " 'there exists no more than a difference of opinion regarding the hypothetical application of a piece of legislation.' " *State v. Ortiz*, 1999 UT 84, ¶ 3, 987 P.2d 39 (quoting *Redwood Gym v. Salt Lake County Comm'n*, 624 P.2d 1138, 1148 (Utah 1981)).

¶ 25 Because the validity of the repeated calls provision was not properly before the court of appeals, it is not properly before us, and any decision as to the validity of that provision would be advisory. Therefore, we decline to reach the merits of Provo City's argument.

## CONCLUSION

¶ 26 The court of appeals' affirmance of defendant's conviction under the unwanted calls provision, the second portion of Utah Code section 76–9–201(1)(b), was correct. Because the parties before the court did not have standing in the court of appeals to litigate the issue of whether the repeated calls provision, the first portion of subsection (1)(b), was constitutionally overbroad, the court of appeals' determinations as to that portion of subsection (1)(b) were advisory in nature and without precedential value. We therefore vacate that portion of the court of appeals' decision.

¶ 27 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.