Scott WHATCOTT, Plaintiff,

v.

CITY OF PROVO, a municipal corporation, Defendant.

No. 2:01 CV 490.

United States District Court, D. Utah, Central Division.

Feb. 3, 2005.

Loren M. Lambert, Arrow Legal Solutions, Midvale, UT, Walter F. Bugden, Tara Isaacson, Bugden & Isaacson LLC, Salt Lake City, UT, for Plaintiff.

Scott Whatcott, Beverly Hills, CA, pro se.

Dennis C. Ferguson, Williams & Hunt, Salt Lake City, UT, for Defendant.

## MEMORANDUM OPINION & ORDER

BENSON, District Judge.

Before the Court is defendant's Motion to Dismiss or, Alternatively, to Compel Discovery. Having considered the parties' briefs and the applicable law, the Court issues the following Memorandum Opinion and Order.

### I. BACKGROUND

In 1999, Plaintiff Scott Whatcott was prosecuted by defendant for violating Provo City's Telephone Harassment Ordinance. Provo City Revised Ordinance § 9/76–9–201. Plaintiff was convicted by a jury of violating the ordinance and was sentenced to serve ten days in jail.[1]

---

1. The predicate action by plaintiff consists of his calling the home of Anne Nielson and her roommate, Kathryn Convey, and leaving the following message on their answering machine:

Plaintiff appealed his conviction to the Utah Court of Appeals arguing that the Provo City Ordinance was unconstitutional pursuant to the First and Fourteenth Amendments. The Utah Court of Appeals overturned plaintiff's conviction, declaring the Provo City Ordinance to be unconstitutional in violation of the First Amendment both on its face and as applied to plaintiff.[2]

When the ruling of the Utah Court of Appeals was issued in March 2000, plaintiff was enrolled as a law student at Georgetown Law School. He had completed his second year of study, and during the summer months of 2000 was employed as a summer associate with the Los Angeles law firm of Kirkland & Ellis.

Plaintiff alleges that the Utah Court of Appeals' opinion made it into the hands of certain persons employed at Kirkland & Ellis and caused his summer employment with the firm to be terminated. Plaintiff proffers in his affidavit that he was called to the office of one of the partners at Kirkland & Ellis who had a copy of the opinion, told plaintiff he was no longer employed with Kirkland & Ellis and then handed him a check for approximately $10,000.00. This amount is what plaintiff would have earned if allowed to continue through the duration of his summer employment.

After the Utah Court of Appeals' decision, plaintiff's conviction was expunged from his record pursuant to state law. Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, arguing that defendant deprived him of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution by prosecuting him on the basis of an unconstitutional ordinance.

## II. PROCEDURAL HISTORY

On May 23, 2002, the Court held that defendant had violated plaintiff's rights under the First and Fourteenth Amendments, granting plaintiff's Motion for Partial Summary Judgment relating to liability. The only issue remaining is damages. Consequently, defendant propounded its First Set of Interrogatories and Request for Production of Documents to plaintiff on August 12, 2002. After plaintiff failed to properly comply with defendant's discovery requests, the Court granted defendant's First Motion to Compel Discovery on May 30, 2003. The Court declined defendant's request to dismiss this action pursuant to Rule 37(b) at that

---

I've got this boil on my testicle that just keeps oozing consistently and constantly and it's painful and it's red. It's either that or a third testicle. And I was wondering if like Kathy or Ann[e], if one of you could help me out here, if either one of you could like grab my crotch and just like fondle that third testicle of mine. It's just oozing all over the place, to get their hands kind of greasy. If you have any advice, please, give me a call. You know the number. Thanks. Bye.
*Provo City v. Whatcott*, 1 P.3d 1113, 1114 (Utah Ct.App.2000).
Kathryn Convey was extremely upset by plaintiff's phone message, calling it obscene, lewd and lascivious. *Id.* Her complaint led to Provo City's prosecution of plaintiff and his ultimate conviction.

2. Plaintiff was prosecuted under Provo City Revised Ordinance § 9/76–9–201. The specific language of the Ordinance is as follows:

(1) A person is guilty of telephone harassment and subject to prosecution in the jurisdiction where the telephone call originated or was received if with intent to annoy, alarm another, intimidate, offend, abuse, threaten, harass, or frighten any person at the called number or recklessly creating a risk thereof, the person:

(a) makes a telephone call, whether or not a conversation ensues;
(d) makes a telephone call and uses any lewd or profane language or suggests any lewd or lascivious act; or
(2) Telephone harassment is a class B misdemeanor.
Utah Code Ann. § 76–9–201 (1999)
The Utah Court of Appeals focused solely on sections (a) and (d) as being the only two sections applicable to plaintiff's constitutional challenge. The remaining were not reviewed for constitutionality. For this reason, the Court only lists the challenged sections.
The Utah Court of Appeals listed numerous examples of protected First Amendment conduct that would violate the Provo City Ordinance. The Court of Appeals found that "the overbreadth of subsections (a) and (d) is real and substantial", as they " 'sweep[ ] within [their] ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech.' " *Id.* at 1116 (citing *Logan City v. Huber*, 786 P.2d 1372, 1375 (Utah Ct.App.1990)) (quoting *Waters v. McGuriman*, 656 F.Supp. 923, 925 (E.D.Pa.1987) (citation omitted)). The Court of Appeals thus held that subsections (a) and (d) of section 76–9–201 were unconstitutionally overbroad. *Id.*

time. Instead, the Court ordered the plaintiff to pay all reasonable expenses, including attorney's fees, incurred by the defendant in filing the motion.

On April 15, 2003, defendant filed a Motion for Partial Summary Judgment on all of plaintiff's damages claims, as well as a Second Motion to Compel. The Court denied in part and granted in part defendant's Motion for Partial Summary Judgment on November 4, 2003. The Court held that there was sufficient evidence to argue that the expunged Utah conviction was the proximate cause of plaintiff's termination at Kirkland & Ellis, but that plaintiff had not produced sufficient facts to support his claim for long term damages, including diminution of earning capacity, loss of income, and ongoing emotional distress related thereto. The Court also granted defendant's Second Motion to Compel Discovery, but again declined defendant's motion to dismiss the case.

The focus of the motion presently before the Court is defendant's Motion to Dismiss or, Alternatively, to Compel Discovery. In response to defendant's motion, plaintiff filed a Motion to Stay Further Proceedings until September 15, 2004, based on his wife's alleged cancer treatment. On September 16, 2004, plaintiff renewed his motion to further stay proceedings, claiming that the parties are negotiating a resolution to the long-standing discovery disputes. Defendant filed a Motion in Opposition to Further Stay of the Proceedings on September 24, 2004, stating that plaintiff's claim is untrue.

### III. DISCUSSION

*Rule 37(b)(2)(C): Plaintiff's Failure to Follow Discovery Rules*

■ Defendant contends that the Court should order the plaintiff to either obey the Court's orders compelling discovery or dismiss his remaining damages claims. Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure permits a court to issue an order dismissing the action if a party fails to obey an order to provide or permit discovery. Although dismissal is a drastic sanction, it is appropriate in cases of willful misconduct. *See Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir.1992).

■ In *Ehrenhaus,* the Tenth Circuit identified five factors a court should consider before dismissing an action as a sanction under Rule 37(b)(2): "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; ... (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Id.* at 921 (citations and quotations omitted). Furthermore, "some of these factors will take on more importance than others." *Id.* at 922. "Because dismissal with prejudice 'defeats altogether a litigant's right to access to the courts,' it should be used as 'a weapon of last, rather than first, resort.'" *Id.* at 922 (quoting *Meade v. Grubbs,* 841 F.2d 1512, 1520 n. 6 (10th Cir. 1988)).

■ In the instant case, plaintiff is a law school graduate acting pro se. Where a party appears pro se, the court should "carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right of access to the courts because of a technical violation." *Ehrenhaus,* 965 F.2d at 922 n. 3. However, pro se litigants "have no license to flout a court's authority willfully. Although pro se litigants get the benefit of more generous treatment in some respects, they must nonetheless follow the same rules of procedure that govern other litigants." *Creative Gifts, Inc. v. UFO,* 235 F.3d 540, 549 (10th Cir.2000) (citations and footnote omitted).

■ The Court will address each factor of the *Ehrenhaus* analysis in turn. First, the plaintiff's actions have prejudiced the defendant by causing unreasonable delay and mounting attorney's fees. The defendant began its efforts to discover the details of defendant's special and general damages claims on August 12, 2002, more than two years ago, when it served its First Set of Interrogatories and Request for Production of Documents to plaintiff. Plaintiff filed objections, most of which were not well taken, to the majority of the discovery requests but provided no evidence or other information that

would lead to discovery of evidentiary support for his damage allegations. For example, two years after these interrogatories were propounded, plaintiff continues to refuse to identify any specific amounts and supporting documentation for such things as attorney's fees, compensation for lost earnings, or for any other damages. On June 3, 2003, this Court entered an order compelling plaintiff to respond to these and other unanswered discovery requests. Despite numerous requests from defense counsel that he do so, plaintiff has willfully refused to comply with this Court's order, and has completely failed to pay defendant's attorney's fees as ordered by the Court.

Moreover, plaintiff reiterated his disdain for cooperation in the discovery process and for this Court's orders by refusing to properly respond to defendant's Second Set of Interrogatories and Request for Production of Documents and this Court's November 3, 2003, Order compelling him to do so. Plaintiff has now refused to file any proper response to defendant's Third Set of Interrogatories and Request for Production of Documents. Plaintiff's latest so-called responses to defendant's interrogatories are yet another example of his blatant disregard for the orders of this Court.

Second, the plaintiff's actions have resulted in substantial interference with the judicial process. As discussed *infra*, the plaintiff's willful noncompliance and disregard for the orders of this Court have resulted in a two-year delay and frustrated the judicial process. When Plaintiff willfully failed to comply with two of this Court's orders, he flouted this Court's authority.

Third, the plaintiff is culpable for his actions. Plaintiff's failure to respond to three sets of interrogatories, not to mention two orders of this Court compelling his responses, could not be reasonably classified as a mere oversight. Although he is acting pro se, plaintiff is a law school graduate. Plaintiff has been given adequate opportunity to show good faith. Despite repeated direction from the Court and opposing counsel as to what type of information is necessary to move his case forward, he has failed to respond in any meaningful fashion. Rather than being cooperative, he has been recalcitrant; rather than complying in good faith with this Court's orders and the rules of procedure, he has been disdainful, dilatory, and noncompliant.

Fourth, plaintiff has been on notice that dismissal of the action is a likely sanction for his continued noncompliance with the discovery process and this Court's orders. In the Court's first order compelling the plaintiff to respond to defendant's interrogatories, the Court sanctioned the plaintiff pursuant to Rule 37(b) and ordered that he pay all reasonable expenses, including attorney's fees, incurred by defendant in filing the motion. However, the Court declined defendant's request to sanction the plaintiff by dismissing his claim for economic damages. The Court also declined this request in its second order compelling the plaintiff to respond to defendant's interrogatories. Thus, plaintiff was warned not once, but twice, that his continued noncompliance with the discovery process could result in a dismissal of this action. Finally, it is clear from plaintiff's willful failure to comply with two of this Court's orders that lesser sanctions would not be effective. Because plaintiff has flouted the Court's orders compelling discovery and willfully refused to cooperate in the discovery process, the Court finds that dismissal of the plaintiff's remaining claims with prejudice is an appropriate sanction pursuant to Rule 37(b)(2).

### Rule 41(b): Plaintiff's Failure to Prosecute

In addition to dismissing plaintiff's damages claims because of his failure to follow discovery rules and the orders of the Court, dismissal of plaintiff's remaining claims with prejudice is appropriate because he has failed to prosecute this case. Rule 41(b) of the Federal Rules of Civil Procedure provides, "[f]or failure of the plaintiff to prosecute or comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."

A careful, or even a cursory, examination of the history of this case reveals a failure by the plaintiff to prosecute this action. It is not an especially difficult case. Plaintiff al-

leged in his complaint that defendant is liable to him for damages caused by his prosecution under a city ordinance that was later found to be unconstitutionally overbroad. He contended that because of his prosecution he was prevented from pursuing a career in the law, that he would not be permitted to take the bar exam, and consequently, could never be a practicing lawyer. He also appeared to allege that he had lost his summer clerkship at the Kirkland & Ellis law firm because of the wrongful prosecution. Defendant quite naturally sought to have the plaintiff provide the evidence upon which these allegations rest. Defendant did this by sending interrogatories and other discovery requests to the plaintiff. Plaintiff responded to these reasonable requests not with good faith answers and documentation, but with wordy objections, most of which were spurious, and with virtually no relevant factual information. As outlined above, plaintiff has maintained this obstructionist approach to defendant's requests throughout the past two years. In so doing, he has managed to advance his own case not at all. At the first critical juncture, a consequence of plaintiff's refusal to comply with the first round of discovery, his main claims regarding his loss of his ability to be a lawyer were dismissed for the simple reason that the plaintiff had failed to produce sufficient evidence to support his claims. Even so, it appeared he had perhaps produced enough evidence to support his claim regarding the loss of his summer clerkship. That caused defendant's counsel to submit to plaintiff specific questions regarding that remaining claim. Unfortunately, plaintiff responded in the same unhelpful manner as before, ultimately providing no meaningful insight into, or factual support for, plaintiff's own claim.

Sooner or later, and hopefully sooner, in every civil lawsuit, a defendant is entitled to know the factual support for the plaintiff's claims. Such information is helpful in many ways; it allows a defendant to understand the complaint, prepare a defense, and it provides a basis for meaningful settlement discussions. This process is at the very heart of litigation; without it a case cannot move forward. When it is the plaintiff, whose voluntary choice it was to bring the action in the first place, who refuses to meaningfully participate in that discovery process, he has wilfully failed to prosecute his action, and the case must be dismissed. Such is the case here. Plaintiff's case will be dismissed because the plaintiff himself, even with numerous opportunities to do so, has not advanced his own chosen cause of action. Therefore, dismissal of plaintiff's remaining claims with prejudice is also appropriate pursuant to Rule 41(b).

## IV. CONCLUSION

Plaintiff has refused to comply with the Court's orders compelling discovery and willfully refused to cooperate in the discovery process and the prosecution of this case. Therefore, dismissal of the plaintiff's remaining claims with prejudice is an appropriate sanction pursuant to Rule 37(b)(2) and Rule 41(b). Accordingly, defendant's Motion to Dismiss is GRANTED and plaintiff's Complaint is DISMISSED with prejudice.

IT IS SO ORDERED.