2008 UT App 32

**STATE of Utah, Plaintiff and Appellee,**

v.

**Anthony Reed GARNER, Defendant and Appellant.**

No. 20060823–CA.

Court of Appeals of Utah.

Jan. 25, 2008.

Debra M. Nelson and Raymond S. Shuey, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeanne B. Inouye, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.

## OPINION

BENCH, Judge:

¶1 Defendant Anthony Reed Garner appeals his sentence following a conviction on three counts of aggravated sexual assault, a first degree felony. *See* Utah Code Ann. § 76-5-405 (Supp.2007). Defendant claims that the trial court abused its discretion by considering impermissible factors to elevate his sentence from the presumptive middle range of ten years to life to the upper range of fifteen years to life. Defendant also claims that his sentence violates his Sixth Amendment rights because the mandatory minimum term of his sentence was elevated based on facts found by a judge, rather than facts found by a jury beyond a reasonable doubt. We decline to review Defendant's claim regarding the trial court's consideration of impermissible sentencing factors because Defendant failed to preserve it and it does not qualify for review under the plain error doctrine or rule 22(e) of the Utah Rules of Criminal Procedure. Defendant's claim regarding the constitutionality of his sentence fails because the Sixth Amendment's prohibition on elevating a sentence through judicial fact finding only applies to the elevation of mandatory maximum sentences, not mandatory minimum sentences. Accordingly, we affirm.

## BACKGROUND

¶2 On May 16, 2004, K.K. (the victim) returned to her apartment and found Defendant inside. Although the victim and Defendant previously had a relationship, the victim had ended the relationship a couple months earlier. After noticing Defendant in her apartment, the victim put her sleeping daughter in a bedroom. She returned to speak with Defendant, who began questioning her about whether she had begun a relationship with another man.

¶3 Defendant suddenly began to make sexual advances toward the victim, which she continually resisted. Defendant tried to rub her breasts and kiss her, and then lunged at her and pushed her down. Once the victim was down, Defendant began shoving laundry in her mouth to muffle her screams and

slammed her head on the floor. Defendant attempted to use a stereo wire to secure the laundry in her mouth, but the cord slid down to her neck and briefly choked her. Defendant then turned the volume on the stereo up to drown out the noise of the victim's screams and cries for help. He tied the victim's hands with a piece of rope and repeatedly knocked her feet out from under her when she attempted to flee. Defendant straddled the victim and penetrated her vagina with his fingers, then with his penis, and then with a vibrator. When he finished, but while the victim was still tied up, he taunted her, asking, "Is this what you wanted?" and stating, "This is what you deserve." As a result of the assault, the victim experienced a number of injuries. Defendant was subsequently arrested and charged.

¶ 4 Following a jury trial, Defendant was convicted on three counts of aggravated sexual assault—one for each incident of penetration. *See* Utah Code Ann. § 76–5–405. Pursuant to Utah Code section 76–5–405(2), each crime was punishable by an indeterminate prison term of six, ten, or fifteen years to life. *See id.* § 76–5–405(2)(a). Utah's indeterminate sentencing scheme, as it was then in effect, required a trial court to impose the middle of the three minimum terms "unless there [we]re circumstances in aggravation or mitigation of the crime." Utah Code Ann. § 76–3–201(7)(a) (2003) (repealed 2007). Prior to the time of sentencing, parties were permitted to submit a statement "identifying circumstances in aggravation or mitigation or presenting additional facts," *id.* § 76–3–201(7)(b), and the court could consider "the record in the case, the probation officer's report, other reports . . . , statements . . . submitted [by the parties], . . . and any further evidence introduced at the sentencing hearing" when determining whether to impose the upper, middle, or lower minimum term, *id.* § 76–3–201(7)(c). Thus, this indeterminate sentencing scheme allowed a judge to exercise discretion and increase or decrease the *minimum* term of a defendant's sentence for aggravated sexual assault, but the *maximum* term—life—always remained the same.

¶ 5 At Defendant's sentencing hearing, the trial court considered the reports, statements, and other evidence submitted by the parties. Defendant read a prepared statement containing an apology for his crime. The victim gave a statement indicating that she still did not feel safe from Defendant. The court also considered a presentence investigative (PSI) report, which indicated that aggravating factors existed to justify an elevation of Defendant's minimum sentence.

¶ 6 Defense counsel and the prosecutor presented arguments regarding the appropriateness of an upward or downward departure from the middle minimum term of ten years. Defense counsel requested that an inaccurate fact on the PSI report be stricken and presented two mitigating factors that had been overlooked on the PSI report: (1) Defendant's developmental disabilities and (2) the fact that the three counts were part of a single criminal episode. Defense counsel also argued that Defendant's criminal record should only be considered moderate to significant, but not extensive, and emphasized that Defendant had no prior history of this specific type of offense. Additionally, defense counsel urged that factors such as bodily injury or cruelty were not appropriate aggravating factors to consider in this case because the aggravated nature of the crime was implicit in the charges themselves.

¶ 7 The prosecutor presented several aggravating factors and argued for an elevation of Defendant's minimum sentence. The aggravating factors highlighted by the prosecutor included Defendant's prior criminal history and previous failure to obey no-contact orders imposed on him after he was charged with the crime. The prosecutor also argued that Defendant was in a position of trust with the victim because they had been domestic partners, that Defendant lacked remorse, and that the crime was terrible, depraved, and cruel.

¶ 8 At the conclusion of the hearing, the trial court sentenced Defendant to an indeterminate term of fifteen years to life on each count and ordered the first and third counts to be served concurrently and the second count to be served consecutively to the other two. In issuing this sentence, the court stat-

ed, "I ... agree with the prosecutor that all of the aggravating factors that he indicated are serious concerns." The court, however, specifically mentioned only three aggravating factors when explaining its decision to elevate the minimum term of Defendant's indeterminate sentence: (1) Defendant's criminal history; (2) Defendant's lack of remorse and failure to understand the implications of his actions; and (3) the unusually cruel nature of the assault. The court also noted that it had taken into account the mitigating factors presented by defense counsel at the hearing. After the trial court pronounced Defendant's sentence, counsel for Defendant did not make an objection on any ground and did not specifically object to the sentence on the ground that the court had considered impermissible factors or violated Defendant's constitutional rights.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Defendant makes two arguments on appeal: (1) the trial court abused its discretion by considering impermissible factors to elevate Defendant's mandatory minimum sentences above the presumptive middle term of severity; and (2) the sentence he received was illegal because it violated his Sixth Amendment right to have a jury, rather than a judge, make factual findings that could elevate his sentence. Defendant argues that his claims were preserved, and even if not, that this court may properly review them under the plain error doctrine or rule 22(e) of the Utah Rules of Criminal Procedure, which allows the review of illegal sentences. The State contends that appellate review of these issues would not be appropriate because Defendant's claims were not preserved and Defendant has not demonstrated any exceptional circumstances, plain error, or entitlement to review under rule 22(e) of the Utah Rules of Criminal Procedure.

¶ 10 Whether a sentence is illegal and qualifies for review under rule 22(e) of the Utah Rules of Criminal Procedure is an issue "[w]e review ... for correctness." *State v. Thorkelson,* 2004 UT App 9, ¶ 9, 84 P.3d 854 (citing *State v. Telford,* 2002 UT 51, ¶¶ 3–4, 48 P.3d 228 (per curiam)). "A consti-

tutional challenge to a statute presents a question of law, which we review for correctness." *State v. Lopes,* 1999 UT 24, ¶ 6, 980 P.2d 191. "When addressing such a challenge, this court presumes that the statute is valid, and we resolve any reasonable doubts in favor of constitutionality." *Id.*

## ANALYSIS

### I. Preservation of Claims

¶ 11 It is well settled that "claims not raised before the trial court may not be raised on appeal." *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346. To preserve an issue for appeal, a defendant "must enter an objection on the record that is both timely and specific." *State v. Rangel,* 866 P.2d 607, 611 (Utah Ct.App.1993). "The objection must 'be specific enough to give the trial court notice of the very error' of which [the party] complains." *State v. Bryant,* 965 P.2d 539, 546 (Utah Ct.App.1998) (quoting *Tolman v. Winchester Hills Water Co.,* 912 P.2d 457, 460 (Utah Ct.App.1996)). This preservation rule "applies to every claim, including constitutional questions." *Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346.

¶ 12 At the sentencing hearing in the instant case, defense counsel made numerous arguments regarding mitigating and aggravating factors and the proper weight to assign such factors. However, defense counsel never objected to the court's consideration of the factors about which Defendant now complains. Likewise, Defendant never raised the issue of his Sixth Amendment rights as they pertain to sentencing, nor did he otherwise indicate that the trial judge was prohibited from elevating the minimum term of his sentence based on the judge's factual findings. Defendant's claims of abuse of discretion and constitutional violations were, therefore, not preserved below.

¶ 13 Defendant asserts that this court may review his claims, even if unpreserved, under either the plain error doctrine or rule 22(e) of the Utah Rules of Criminal Procedure. We discuss, in turn, the applicability of these exceptions to the preservation rule.

## A. Plain Error Doctrine

¶ 14 Defendant contends that this court may review his two claims under the plain error doctrine.[1] In order to qualify for appellate review under this doctrine, a defendant must show that " '(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful.' " *Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (alteration in original) (quoting *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993)). "If any one of these requirements is not met, plain error is not established." *Dunn*, 850 P.2d at 1209.

¶ 15 Here, we see nothing obvious about any error in the trial court's consideration of the factors it identified as justifying an elevation of Defendant's minimum sentence: Defendant's criminal history, his inadequate remorse, and the unusual cruelty of the crime. The forms used to determine aggravating and mitigating circumstances relevant to sentencing explicitly state, "This list of aggravating and mitigating factors is non-exhaustive and illustrative only." Utah Court Rules Ann., App. D, Form 3, at 1616. Thus, Defendant has not demonstrated that the trial court committed an error, let alone an obvious one, by considering factors not explicitly listed on the forms. We therefore find no justification under the plain error doctrine for reviewing Defendant's unpreserved claim of abuse of discretion.

## B. Rule 22(e) of the Utah Rules of Criminal Procedure

¶ 16 Defendant further contends that, even if the plain error doctrine is inapplicable, rule 22(e) of the Utah Rules of Criminal Procedure permits appellate review of his claims. "[R]ule 22(e) permits th[is] court ... to consider the legality of a sentence even if the issue is raised for the first time on appeal." *State v. Brooks*, 908 P.2d 856, 860 (Utah 1995). This is "because an illegal sentence is void," and, "like issues of jurisdiction, [the issue of an illegal sentence] can be raised *at any time*, in any forum." *State v. Clark*, 913 P.2d 360, 362 (Utah Ct. App.1996) (citing *Brooks*, 908 P.2d at 860).

¶ 17 Nevertheless, "[w]hile rule 22(e) allows a court to review an illegal sentence at any time, it must be 'narrowly circumscribed' to prevent abuse." *State v. Thorkelson*, 2004 UT App 9, ¶ 15, 84 P.3d 854 (quoting *State v. Telford*, 2002 UT 51, ¶ 5, 48 P.3d 228 (per curiam)). Thus, the Utah Supreme Court has held that an illegal sentence reviewable under rule 22(e) "is a 'patently' illegal sentence, or a 'manifestly' illegal sentence." *Id.* (citations omitted). "A 'patently' or 'manifestly' illegal sentence generally occurs in one of two situations: (1) where the sentencing court has no jurisdiction, or (2) where the sentence is beyond the authorized statutory range." *Id.* On the other hand, "errors [that] ... can be described as ordinary or 'run-of-the-mill' ... [are] regularly reviewed on appeal under rule 4(a) of the Utah Rules of Appellate Procedure" and do not qualify for review under rule 22(e). *Id.* Ordinary or run-of-the-mill errors include a trial court's failure to consider requisite statutory factors before imposing consecutive sentences. *See id.* ¶ 12. These errors also include a denial of due process resulting from a trial court's failure to consider mitigating evidence. *See id.* ¶ 11.

¶ 18 Defendant's claim for abuse of discretion does not qualify for review under rule 22(e). Defendant's claim that the trial court abused its discretion by failing to consider proper factors before imposing an elevated minimum sentence is an ordinary, run-of-the-mill error that does not fit into the narrow category of claims reviewable under rule 22(e). This claim does not implicate a patently or manifestly illegal sentence, just as a trial court's failure to consider statutory factors when imposing consecutive sentences does not. In contrast, Defendant's claim that Utah's indeterminate sentencing scheme violates his Sixth Amendment rights is reviewable under rule 22(e).

¶ 19 In *State v. Telford*, 2002 UT 51, 48 P.3d 228 (per curiam), a defendant appealed the denial of his rule 22(e) motion and attacked the constitutionality of Utah's indeter-

---

1. Later in this opinion, we conclude that Defendant's constitutional claim regarding his Sixth Amendment rights qualifies for review under rule 22(e) of the Utah Rules of Criminal Procedure. We therefore do not address whether the plain error doctrine justifies review of that claim.

minate sentencing scheme by asserting that it violated various sections of the Utah Constitution, as well as the Sixth and Eighth Amendments of the United States Constitution. *See id.* ¶ 2. The supreme court reviewed and rejected the defendant's contentions with respect to certain constitutional provisions on the merits. *See id.* ¶¶ 3–4. The Utah Supreme Court refused to consider the balance of the defendant's arguments under rule 22(e), including those related to the Sixth Amendment, because the remaining constitutional clauses "d[id] not create any distinct rights related to sentencing." *Id.* ¶ 6. Thus, the court reasoned, rule 22(e) could not "serve as a vehicle for raising an argument pursuant to those clauses." *Id.*

¶ 20 Here, however, Defendant's constitutional argument centers on recent United States Supreme Court Sixth Amendment jurisprudence that gives a defendant distinct rights related to sentencing. Defendant's argument is essentially that his sentence is illegal because it violates his Sixth Amendment right to have a jury, rather than a judge, make certain findings that would elevate his sentence. As a result, Defendant's attack on the constitutionality of his sentence, and Utah's indeterminate sentencing scheme in general, qualifies for review under rule 22(e) and is considered in the following section.

## II. Constitutionality of Defendant's Sentence

¶ 21 Defendant argues that Utah's indeterminate sentencing scheme violates his Sixth Amendment rights because it permits a judge to make factual findings to elevate his minimum sentence above the presumptive middle term to the higher term contemplated by statute, notwithstanding the fact that the judicial fact finding did not elevate his sentence beyond the statutory maximum. The Sixth Amendment guarantees criminal defendants "the right to . . . trial . . . by an impartial jury." U.S. Const. amend. VI. Notwith-

standing the jury requirement of the Sixth Amendment, in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the United States Supreme Court held that a judge may find, by a preponderance of the evidence, a fact that increases the *minimum* penalty for a crime. *See id.* at 83–86. In a later case, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory *maximum* [, other than the fact of a prior conviction,] must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 489, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (emphasis added). In so ruling, the court explicitly stated, "We do not overrule *McMillan.*" *Id.* at 487 n. 13, 120 S.Ct. 2348.

¶ 22 Two years later, the Supreme Court reaffirmed *McMillan* and held that the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), does not apply to judicial fact finding that increases a mandatory minimum sentence. *See Harris v. United States*, 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ("*Apprendi's* conclusions do not undermine *McMillan's*. There was no comparable historical practice of submitting facts increasing the mandatory minimum to the jury, so the *Apprendi* rule did not extend to those facts. Indeed, the Court made clear that its holding did not affect *McMillan* at all[.]").[2] The Court explained that "[j]udicial fact finding in the course of selecting a sentence *within the authorized range* does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments," whereas fact finding elevating a sentence above the statutory maximum does. *Id.* at 558, 122 S.Ct. 2406 (emphasis added). The court explained that "[t]he Fifth and Sixth Amendments ensure that the defendant 'will never get *more* punishment than he bargained for when he did the crime,' but they do not promise that he will receive 'anything less' than that." *Id.* at 566, 122

---

**2.** While *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), was a plurality opinion, a majority of the justices agreed that *Apprendi's* prohibition on judicial fact finding to elevate a maximum sentence did not apply to judicial fact finding to elevate a minimum sen-

tence. Chief Justice Rehnquist, Justice O'Connor, and Justice Scalia joined in Justice Kennedy's main opinion. Justice Breyer joined the main opinion "to the extent . . . that *Apprendi* does not apply to mandatory minimums." *Id.* at 570, 122 S.Ct. 2406 (Breyer, J., concurring).

S.Ct. 2406 (quoting *Apprendi*, 530 U.S. at 498, 120 S.Ct. 2348 (Scalia, J., concurring)).[3]

¶ 23 The most recent Supreme Court case cited by Defendant, *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), does not change the holdings of *McMillan* and *Harris* or the applicability of *Apprendi* to judicial fact finding that increases a mandatory minimum sentence within a given range. In *Cunningham*, the Supreme Court reiterated the holding of *Apprendi*, which is that "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham*, 127 S.Ct. at 863–64. The Court also reiterated a principle from *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which is that "the relevant 'statutory maximum,' . . . is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Cunningham*, 127 S.Ct. at 865 (quoting *Blakely*, 542 U.S. at 303–04, 124 S.Ct. 2531). Using these two principles, the Supreme Court struck down California's determinate sentencing scheme that provided three *fixed* terms for a sentence-a lower, middle, and upper term—and allowed a judge to make findings, by a preponderance of the evidence, to elevate a defendant's sentence above the presumptive middle term to the upper term. *See id.* at 868, 127 S.Ct. 856. Since the maximum sentence the judge could impose without additional fact finding was the middle of the three fixed terms, the Supreme Court concluded that the elevation of a defendant's sentence to the upper term based on judicial fact finding violated the Sixth Amendment. *See id.* at 871, 127 S.Ct. 856.

¶ 24 Utah's sentencing scheme differs from California's in several relevant ways and is similar to the example of a permissible sentencing scheme cited in *Cun-*

*ningham*. Unlike California's sentencing system, Utah's statutory sentencing scheme involves three *ranges* of sentences, rather than three fixed terms. Importantly, the upper end of the range, the maximum, does not change based on judicial fact finding. Even though Utah statutes require a sentencing judge to impose the middle minimum term as the default, *see* Utah Code Ann. § 76–3–201(7)(a) (2003) (repealed 2007), the minimum term can never move beyond the statutory range. As the Supreme Court indicated in *Cunningham*, a sentencing system that "permit[s] judges genuinely 'to exercise broad discretion . . . within a statutory range,' . . . encounters no Sixth Amendment shoal." *Id.* (first omission in original) (quoting *United States v. Booker*, 543 U.S. 220, 233, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)).

¶ 25 We therefore conclude that Defendant's sentence does not violate the Sixth Amendment as interpreted by the United States Supreme Court in *McMillan, Harris, Apprendi*, and *Cunningham*. Judicial fact finding, as contemplated by Utah's statutory scheme, cannot lead to an elevation of the maximum term of Defendant's sentence and therefore does not run afoul of the Sixth Amendment. Accordingly, Defendant's sentence is not illegal.

## CONCLUSION

¶ 26 We decline to review Defendant's claim that the trial court abused its discretion by considering certain factors at the sentencing hearing because the claim is not preserved and does not qualify for any exception to the preservation requirement. Although Defendant's claim that his sentence violates his Sixth Amendment right may be raised for the first time on appeal pursuant to rule 22(e) of the Utah Rules of Criminal Procedure, the claim nonetheless fails. Defendant's sentence does not run afoul of the Sixth Amendment because the trial court's fact finding elevated only Defendant's mini-

---

3. Defendant's argument, while ultimately unavailing in light of this precedent, is not frivolous. As Justice Thomas noted in his dissent in *Harris*, "Whether one raises the floor or raises the ceiling [of a sentence] it is impossible to dispute that the defendant is exposed to greater punishment than is otherwise prescribed." *Harris v. United States*, 536 U.S. 545, 579, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (Thomas, J., dissenting). Nonetheless, this view has not been adopted by a majority of the Supreme Court.

mum, rather than maximum, sentence and it did so within the statutory range of punishment for the crime of aggravated sexual assault.

¶ 27 Accordingly, we affirm.

¶ 28 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.