2021 UT App 36

# THE UTAH COURT OF APPEALS

LEHI CITY,
Appellee,
*v.*
JASON RICKABAUGH,
Appellant.

Opinion
No. 20190501-CA
Filed April 1, 2021

Fourth District Court, American Fork Department
The Honorable Robert C. Lunnen
No. 181101203

Staci A. Visser and Justin S. Pratt, Attorneys
for Appellant

James Hansen, Timothy G. Merrill, and Cherylyn
Egner, Attorneys for Appellee

Sean D. Reyes and John J. Nielsen, Attorneys for
Amicus Curiae State of Utah

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGE DIANA HAGEN and SENIOR JUDGE KATE APPLEBY
concurred.[1]

POHLMAN, Judge:

¶1 Jason Rickabaugh appeals his conviction of electronic
communication harassment, a class B misdemeanor. He
contends that the governing statute is unconstitutionally

---

1. Senior Judge Kate Appleby began work on this case as an
active member of the Utah Court of Appeals. She completed her
work as a senior judge sitting by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

overbroad and vague, both on its face and as applied to him. We affirm.

BACKGROUND

¶2    The parties agree that the events in this case arise from the Lehi City Planning Commission's and Lehi City Council's consideration of certain mining and development projects near Traverse Mountain. Rickabaugh and the victim (Victim), both private citizens, took an interest in the issue and held opposing views. Victim was "actively involved in brokering" an earlier compromise between the developer and the community, and he "had a lot of different discussions with the City" on the particular development then under consideration. On January 16, 2018, Victim attended a city council meeting and, during public comment, spoke in favor of the development.

¶3    On January 26, 2018, Rickabaugh sent at least thirty direct messages to Victim via Facebook. Starting at 12:40 a.m., Rickabaugh wrote,[2] among other things, the following:

> • Are you such a fucking bitch you don't want to take the time to drive your children across Kevin bacon's rail road tracks?[3]

> • Do you have skin in the game? You are such a pathetic cunt. When are you—whatever you traded

---

2. We retain Rickabaugh's original spelling, capitalization, and punctuation.

3. Rickabaugh's messages contain several references to *Footloose*, a 1984 movie that starred Kevin Bacon and had scenes filmed in Lehi, Utah. *See Footloose (1984 film)*, Wikipedia, https://en.wikipedia.org/wiki/Footloose_(1984_film) [https://perma.cc/KDS8-HA43].

your soul for, I hope it keeps your cunt warm at night. Trading your soul and your family's lungs for some cunt-ass alternative.

• Perhaps I should contact the first presidency to strip you of all dignity.

• Suck dick [Victim]! Your mom is the mother of a whore.

• [Your wife] will leave you because you are a CUNT!

• Your children will hate you!

• I''M on you like white on rice on a paper airplane on a paper plat being held by a captain on a submarine that broke through the ice at the FUCKING NORTH POLE! IN A FUCKING GOD ENDING BLIZARD.

• YOU KNOW WHAT . . . . . . . NOW YOU ARE #1 ON MY LIST OF PEOPLE TO DESTROY!

•PORTER[4] TO THE NEXT LEVEL OF CUNT SMASHING!

Later that morning, at 11:16 a.m., Rickabaugh followed up with another message: "Sorry man. I get really drunk and angry about the insane idea that mining in a residential area is ok."

¶4    Victim read Rickabaugh's "barrage" of messages in the morning. Feeling "violated" and "threaten[ed]," Victim contacted the police. When the police reached Rickabaugh and

---

4. Porter is Rickabaugh's middle name and the name he goes by on Facebook.

asked him why he sent the messages to Victim, Rickabaugh "freely admitted that he had sent them out of a difference of opinion between him and [Victim] regarding . . . the mining efforts or . . . the excavation within Traverse Mountain." Lehi City then charged Rickabaugh with one count of electronic communication harassment based on the messages.

¶5 The case was first brought in Lehi City Justice Court. Rickabaugh moved to dismiss the case on constitutional grounds, arguing that the electronic communication harassment statute is overbroad and vague and that it infringed on his right to free speech. The court denied the motion, and Rickabaugh was tried and convicted by a jury. He then appealed for a trial de novo in district court. *See generally* Utah Code Ann. § 78A-7-118 (LexisNexis 2018) (explaining that a criminal defendant in justice court "is entitled to a trial de novo in the district court"); Utah R. Crim. P. 38 (setting forth the procedural rules for an appeal from justice court to district court).

¶6 The City filed a bill of particulars in district court, stating that the offense occurred on or about January 26, 2018. It also stated its theory of the case under three subsections of the electronic communication harassment statute. Specifically, the City asserted that Rickabaugh "committed the crime of electronic communication harassment, with the intent to intimidate, abuse, or harass, frighten, or threaten [Victim]" by "making repeated contact by means of electronic communications"; by "sending messages via electronic means, that contained insults, taunts, or challenges likely to provoke a violent or disorderly response"; or by "making contact with [Victim] by means of electronic communication and threaten[ing] to inflict injury, physical harm, or damage to any person or property." *See* Utah Code Ann. § 76-9-201(2)(a)(i), (b), (c) (LexisNexis 2017).

¶7 Before trial, Rickabaugh again moved to dismiss the case on constitutional grounds. He asserted generally that the statute is unconstitutionally overbroad and vague, both on its face and

as applied to him. In his view, "the statute is overbroad by including constitutionally protected speech within its prohibitions" and it is "written in a vague manner and as a result a person of ordinary intelligence cannot know what is prohibited."

¶8  After hearing oral argument, the district court denied Rickabaugh's motion to dismiss. Noting that "[f]acial challenges including those based on overbreadth are disfavored," the court first ruled that the electronic communication harassment statute is not overbroad. It reasoned that a mental state, that is, mens rea,[5] is "necessary to separate wrongful conduct from otherwise innocent conduct" and that the "mens rea . . . is everything in this" case. The court further explained that the City "hav[ing] to prove to a jury the specific intent to intimidate, abuse, threaten, or disrupt" is why the court "can't overturn this statute." It also observed that even if one subsection of the statute were unconstitutional, it could not "overturn the entire statute." Next, the court ruled that the statute is not vague, explaining that Rickabaugh's "vagueness arguments fail for the same reason as . . . his overbreadth arguments." Accordingly, the court concluded that "the specific intent requirement mitigates any potential vagueness" in the statute.

¶9  The case proceeded to a jury trial in district court. The City's witnesses included Victim, and the City introduced the January 26, 2018 Facebook messages into evidence. Rickabaugh himself testified and admitted that he sent at least thirty messages to Victim via Facebook. Rickabaugh stated that he "wanted to communicate with [Victim] hopefully to get [him] to change his position and show him [Rickabaugh's]

---

5. Mens rea is "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime" and "is the second of two essential elements of every crime at common law, the other being the actus reus." *Mens rea*, Black's Law Dictionary (11th ed. 2019).

disappointment in . . . [Victim's] decisions and perhaps to strike [up] a conversation." To show Rickabaugh's intent, the City also introduced evidence indicating that after Victim "blocked" Rickabaugh on Facebook, Rickabaugh "called [Victim] out" and accused him of bigotry on Lehi Link, a community Facebook page. This Lehi Link post prompted Victim, using somebody else's Facebook page, to respond on the forum. The actual Lehi Link posts, however, were not offered into evidence. But three emails that Rickabaugh sent to the City mayor in May 2018, in which Rickabaugh referred to his dispute with Victim, were entered into evidence.

¶10    The jury found Rickabaugh guilty. He now appeals to this court. *See generally* Utah Code Ann. § 78A-7-118(8) ("The decision of the district court [from a case originating in justice court] is final and may not be appealed unless the district court rules on the constitutionality of a statute or ordinance.").

ISSUES AND STANDARDS OF REVIEW

¶11    On appeal, Rickabaugh contends that the district court should have concluded that the electronic communication harassment statute is unconstitutionally overbroad and vague, both on its face and as applied to him. "A constitutional challenge to a statute presents a question of law," and we review the district court's decision on that question for correctness. *State v. Garner*, 2008 UT App 32, ¶ 10, 177 P.3d 637 (cleaned up); *see also State v. Mattinson*, 2007 UT 7, ¶ 6, 152 P.3d 300 ("Whether a statute is unconstitutionally overbroad or vague is a question of law . . . ." (cleaned up)). "Those who challenge a statute or ordinance as unconstitutional bear the burden of demonstrating its unconstitutionality." *State v. Jones*, 2018 UT App 110, ¶ 9, 427 P.3d 538 (cleaned up). "When addressing such a challenge, this court presumes that the statute is valid, and we resolve any reasonable doubts in favor of constitutionality." *Garner*, 2008 UT App 32, ¶ 10 (cleaned up); *accord South Salt Lake City v. Maese*, 2019 UT 58, ¶ 10, 450 P.3d 1092.

ANALYSIS

¶12 The statute at issue in this case is Utah Code section 76-9-201, which defines the crime of electronic communication harassment. The relevant provisions state,

> (2) A person is guilty of electronic communication harassment and subject to prosecution in the jurisdiction where the communication originated or was received if with intent to intimidate, abuse, threaten, harass, frighten, or disrupt the electronic communications of another, the person:
>
> (a)(i) makes repeated contact by means of electronic communications, regardless of whether a conversation ensues; or
>
> . . .
>
> (b) makes contact by means of electronic communication and insults, taunts, or challenges the recipient of the communication or any person at the receiving location in a manner likely to provoke a violent or disorderly response; [or]
>
> (c) makes contact by means of electronic communication and threatens to inflict injury, physical harm, or damage to any person or the property of any person . . . .

Utah Code Ann. § 76-9-201(2)(a)(i), (b), (c) (LexisNexis 2017). The statute defines "electronic communication" as "any communication by electronic, electro-mechanical, or electro-optical communication device for the transmission and reception of audio, image, or text but does not include broadcast transmissions or similar communications that are not targeted at any specific individual." *Id.* § 76-9-201(1)(b).

¶13    Rickabaugh argues that the district court should have determined that this statute is unconstitutionally overbroad and vague.[6] We first address overbreadth and then turn to vagueness.

## I. Overbreadth

¶14    Rickabaugh contends that the electronic communication harassment statute is overbroad both facially and as applied. We consider his facial challenge and then his as-applied challenge.

### A.    Facial Overbreadth Challenge

¶15    Rickabaugh asserts that each of the challenged subsections under section 76-9-201 "criminalize[s] speech" and is unconstitutionally overbroad by "reach[ing] a substantial amount of constitutionally protected conduct" under the First Amendment to the United States Constitution. (Cleaned up.) We first determine that under the circumstances of this case, we may sustain the statute if we conclude that one of the challenged subsections is not overbroad. We then conclude that subsection (2)(b) is not overbroad and that Rickabaugh's facial overbreadth challenge is therefore unavailing.

¶16    At the outset, we recognize the Utah Supreme Court's direction that "a defendant may only challenge multiple portions

---

6. Rickabaugh claims the statute is unconstitutional under both the United States Constitution and the Utah Constitution. Although he cites one case to support the proposition that Article I, Section 15 of the Utah Constitution is "broader than its federal counterpart," he does not undertake a separate state constitutional analysis or further develop this argument. (Cleaned up.) "Without more fulsome briefing" on a state constitutional question, Utah appellate courts will decline to consider a state constitutional argument. *See State v. Evans*, 2019 UT App 145, ¶ 17 n.5, 449 P.3d 958. We follow that course here.

of a statute if invalidating each of the challenged portions would be necessary to find that [the] defendant's conduct fell outside the statute's proscriptions." *Provo City Corp. v. Thompson*, 2004 UT 14, ¶ 18, 86 P.3d 735. This means that "[i]f a finding that one portion is valid will suffice to uphold a conviction, a defendant lacks standing to challenge, and a court cannot properly adjudicate, the constitutionality of another portion of the statute."[7] *Id.*

¶17 To illustrate, in *Thompson*, the defendant "might have been convicted" under two provisions of the telephone harassment statute that he claimed were invalid—the so-called repeated calls provision and the unwanted calls provision. *Id.* ¶¶ 19, 21. The court of appeals affirmed the defendant's conviction, upholding the unwanted calls provision but invalidating the repeated calls provision. *Id.* ¶ 3. On certiorari, the supreme court determined that the court of appeals had erred in reaching the latter issue of whether the repeated calls provision was constitutional. *Id.* ¶¶ 4, 21. The supreme court explained that once the court of appeals upheld the unwanted calls provision, "[the] defendant had no standing to challenge the constitutionality of the repeated calls provision." *Id.* ¶ 21. In other words, "the issue of whether the repeated calls provision was valid was no longer properly before the [court of appeals]

---

7. As more thoroughly discussed in *Provo City Corp. v. Thompson*, 2004 UT 14, 86 P.3d 735, "a party may generally assert only his or her own rights and cannot raise the claims of third parties who are not before the court." *Id.* ¶ 9. "When a challenge of statutory overbreadth is made, an exception to the basic standing requirements is available in the First Amendment context." *Id.* ¶ 10. Thus, a defendant may pursue an overbreadth challenge "on behalf of others not before the court." *Id.* (cleaned up). Nevertheless, the party "must still demonstrate its own cognizable injury in fact," which includes showing that "if the court invalidates the challenged provision, the party's harm will be redressed." *Id.* ¶ 12 (cleaned up).

once it had determined that [the] defendant's conviction was supported by a different, valid portion of the statute." *Id.*

¶18 Rickabaugh was charged under the three subsections he challenges on appeal. The jury was instructed on each of these provisions and found him guilty. Like the defendant in *Thompson*, Rickabaugh acknowledges that he might have been convicted under the three challenged portions of the statute.[8] Under the principles of *Thompson*, if we conclude that one of the three challenged subsections is valid and will suffice to uphold Rickabaugh's conviction, we will not adjudicate the

---

8. The verdict form did not ask the jury to indicate which subsection formed the basis of its conviction. Given this, Rickabaugh suggests that it is unknown what "single statutory variation" applied to his conviction where, in his view, "the particular subsections under which [he] was charged create[] seventy-eight different variations of the elements." Uncertainty in this regard, however, "counts against [Rickabaugh], who bears the burden of proof on appeal." *See State v. Hummel*, 2017 UT 19, ¶ 82, 393 P.3d 314. "[A] lack of certainty in the record does not lead to a reversal"; rather, "it leads to an affirmance on the ground that the appellant cannot carry his burden of proof." *Id.* Notably, Rickabaugh has not argued on appeal that the evidence was insufficient under any of the three challenged subsections.

To the extent Rickabaugh now argues that the district court plainly erred by not requiring it to be "readily discernible how the City was applying the [electronic communication harassment] statute to the communications he made," he raises this argument for the first time in his reply brief. "When a party fails to raise and argue an issue on appeal, or raises it for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court." *State v. Johnson*, 2017 UT 76, ¶ 16, 416 P.3d 443. "This rule applies to claims of plain error." *State v. Robinson*, 2014 UT App 114, ¶ 12, 327 P.3d 589. We thus consider this argument to be untimely.

constitutionality of any other subsections of the statute. *See id.* ¶¶ 18, 21. Because we conclude that subsection (2)(b) is valid, we do not address whether the other subsections are overbroad.

¶19 Overbreadth "is a substantive due process question which addresses the issue of whether the statute in question is so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well." *State v. Frampton*, 737 P.2d 183, 192 (Utah 1987) (cleaned up). The overbreadth doctrine "is strong medicine," employed only "as a last resort." *Thompson*, 2004 UT 14, ¶ 10 (cleaned up). A statute is overbroad "only if it does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or the press." *Provo City v. Whatcott*, 2000 UT App 86, ¶ 8, 1 P.3d 1113 (cleaned up).

¶20 The constitutional guarantee of freedom of speech does not allow "the government to punish the use of words or language outside of 'narrowly limited classes of speech.'" *Logan City v. Huber*, 786 P.2d 1372, 1374 (Utah Ct. App. 1990) (quoting *Gooding v. Wilson*, 405 U.S. 518, 521–22 (1972)). "Those limited classes of unprotected speech" include "the obscene, the libelous, fighting words, and certain language that incites." *Id.* at 1374–75 (cleaned up). The parties agree that the most relevant class of unprotected speech in this case is "fighting words." Fighting words are defined as words that "tend to incite an immediate breach of the peace by the person to whom they are directly addressed."[9] *Id.* at 1375.

---

9. Rickabaugh has not argued that the fighting words exception cannot apply where the violent or disorderly response may not be imminent due to the distance between the actor and recipient of the communication or any person at the receiving location. Thus, we express no opinion on the matter.

¶21 To conclude that a statute is unconstitutionally overbroad where "conduct and not merely speech is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973); *accord Provo City v. Thompson*, 2002 UT App 63, ¶ 23, 44 P.3d 828, *aff'd in part, vacated in part*, 2004 UT 14, 86 P.3d 735; *see also State v. Norris*, 2007 UT 6, ¶ 13, 152 P.3d 293 (stating that "a court's first task is to determine whether the enactment reaches a *substantial amount of constitutionally protected conduct*" and that if "it does not, then the overbreadth challenge must fail" (cleaned up)). As relevant here, the government has a "compelling interest in protecting its citizens from threatening or harmful behavior." *Salt Lake City v. Lopez*, 935 P.2d 1259, 1264 (Utah Ct. App. 1997), *superseded by statute on other grounds as recognized by Baird v. Baird*, 2014 UT 08, 322 P.3d 728; *cf. Whatcott*, 2000 UT App 86, ¶ 10 ("[T]he state has a legitimate interest in protecting the public from certain unreasonable telephone calls.").

¶22 Applying this framework, we hold that subsection (2)(b) is not facially overbroad. The plain language of subsection (2)(b) states that a person commits electronic communication harassment when, "with intent to intimidate, abuse, threaten, harass, frighten, or disrupt the electronic communications of another, the person . . . makes contact by means of electronic communication and insults, taunts, or challenges the recipient of the communication or any person at the receiving location in a manner likely to provoke a violent or disorderly response." Utah Code Ann. § 76-9-201(2)(b) (LexisNexis 2017).

¶23 Notably, the statute requires that the person act with "intent to intimidate, abuse, threaten, harass, frighten, or disrupt the electronic communications of another." *Id*. § 76-9-201(2). The district court relied heavily on this intent requirement to uphold the statute. But Rickabaugh argues that "the mere fact that a statute impacting constitutional rights has a specific intent does not automatically shield it from constitutional scrutiny." And the City concedes that "it would be overstated to assert that the

requirement of specific intent eliminates any and all risk that permissible speech could be asserted to violate the statute."

¶24　On this score, we agree that a specific intent requirement does not necessarily save a statute from an overbreadth challenge. *See, e.g.*, *Whatcott*, 2000 UT App 86, ¶¶ 11–14 (determining that two statutory subsections were overbroad even though they had a specific intent requirement). But we also share the State's view that the intent requirement mitigates the risk that the statute reaches a substantial amount of constitutionally protected conduct. *See, e.g.*, *United States v. Sayer*, 748 F.3d 425, 434–35 (1st Cir. 2014) (indicating that a statute's prohibition on a course of conduct done with the intent to kill, injure, or harass "clearly targets conduct performed with serious criminal intent, not just speech that happens to cause annoyance or insult"); *State v. Hagen*, 558 P.2d 750, 753 (Ariz. Ct. App. 1976) ("By specifying the *intent* with which the call must be made and the nature of the language prohibited, the statute clearly demonstrates that the prohibited activities find no protection under the First Amendment."); *State v. Alexander*, 888 P.2d 175, 179–80 (Wash. Ct. App. 1995) (explaining that a similar overbreadth challenge failed "because a specific intent requirement sufficiently narrowed the laws' proscriptions").

¶25　Rickabaugh suggests that under the statute's intent requirement and subsection (2)(b)'s statutory language—specifically, the qualifier "in a manner likely to provoke a violent or disorderly response"—"someone could be convicted by merely saying something subjectively offensive to the receiving individual." We disagree.

¶26　The statute specifically targets "insults, taunts, or challenges [to] the recipient" that are "likely to provoke a violent or disorderly response" but only when the actor or speaker also has "intent to intimidate, abuse, threaten, harass, frighten, or disrupt the electronic communications of another." Therefore, having narrowed its target on at least three levels, the statute's language does not create a subjective standard for judging

whether the speaker has committed a criminal act. *Cf. People ex rel. VanMeveren v. County Court in & for County of Larimer*, 551 P.2d 716, 718–20 (Colo. 1976) (en banc) (concluding that statutory language similar to Utah's subsection (2)(b) "does not require that the speaker guess as to the effect of his words upon the addressee" but instead "requires an objective determination: whether the words when directed to an average person would tend to induce an immediate breach of the peace"). We agree with the State that the statute "focuses on the *speaker's* intent," not on the listener's subjective reaction. *See generally People v. Taravella*, 350 N.W.2d 780, 784 (Mich. Ct. App. 1984) ("The statute clearly provides that the focus is on the caller; it is the malicious intent with which the transmission is made that establishes the criminality of the conduct. Thus, irrespective of the listener's subjective perceptions, without the necessary intent on the part of the caller the use of obscene words alone would not fall within the statutory proscriptions." (cleaned up)); *Alexander*, 888 P.2d at 180 ("[T]he specific intent requirement, which places the focus of the statute on the caller, sufficiently narrows the scope of the proscribed conduct.").

¶27   Still, Rickabaugh complains that the specific terms—abuse, harass, frighten, and disrupt—within the requisite intent "are not statutorily defined" and asserts that the terms "themselves broaden the scope of the statute into constitutionally protected speech." (Cleaned up.) He thus urges us to view each intent term in isolation.

¶28   For example, he asserts that the term "harass" captures speech that is merely "annoying" and "unpleasant" or "uninvited" and would include "unwanted telephone solicitations made to a private home during the dinner hour" or a mother's worried phone calls to an adult son to see if he is all right. Rickabaugh argues that the term "frighten" is "equally problematic" because "there is a plentitude of communication that makes someone afraid (or is intended to make someone afraid) that does not fall outside the scope of protected speech." He suggests that, for instance, "frighten" would include an

employer's email to employees warning that "if a project is not completed by a certain day and time that they will be fired." Further, Rickabaugh argues that the term "disrupt the electronic communications of another" is problematic because, in his view, the "vast majority of electronic communication can be said to have the specific intent to interrupt the normal course of the receiving individual's activity." As examples, Rickabaugh posits that the statute would apply to political campaigns or retailers who "send multiple email messages or make multiple online posts . . . intended to reorient the reader away" from what the reader was doing at the time.

¶29    We decline Rickabaugh's invitation to isolate each term within the statute's intent requirement. Instead, our analysis of the requisite intent is tethered to the specific language of subsection (2)(b) because the statute requires *both* intent and an action. That subsection prohibits a person, acting with the requisite intent, from "mak[ing] contact by means of electronic communication and insult[ing], taunt[ing], or challeng[ing] the recipient of the communication or any person at the receiving location in a manner likely to provoke a violent or disorderly response." Utah Code Ann. § 76-9-201(2)(b). The statute thus is aimed at conduct performed with "criminal intent, not just speech." *Cf. Sayer*, 748 F.3d at 435; *United States v. Waggy*, 936 F.3d 1014, 1019–20 (9th Cir. 2019) (collecting cases).

¶30    Viewing the terms of the requisite intent along with the language of subsection (2)(b), we conclude that Rickabaugh has not shown that Utah Code section 76-9-201(2)(b) sweeps up a substantial amount of constitutionally protected speech. *See Broadrick*, 413 U.S. at 615 (explaining that "the overbreadth of a statute must not only be real, but substantial as well"). Indeed, each of Rickabaugh's hypotheticals fails to demonstrate overbreadth when the provision is read as a whole. We see it as highly unlikely that a substantial number of unwanted telephone solicitations, mothers' worried phone calls, employers' warnings to employees, or political or commercial emails would be both "insult[ing], taunt[ing], or challeng[ing] . . . in a manner

likely to provoke a violent or disorderly response" and also be made with "intent to intimidate, abuse, threaten, harass, frighten, or disrupt the electronic communications of another."[10] *See* Utah Code Ann. § 76-9-201(2)(b); *see also Broadrick*, 413 U.S. at 615.

¶31     Nevertheless, Rickabaugh offers two other hypotheticals premised on a holistic reading of section 76-9-201(2)(b). First, he suggests that a person could have the specific intent to "frighten" a friend who has arachnophobia by sending pictures and videos of "large, scary spiders" and that this act could also "taunt and elicit the alleged victim to have a 'disorderly response' by displaying outward manifestations of fear." We are not convinced that section 76-9-201(2)(b) captures this scenario. We read the statute's "violent or disorderly response" language as pertaining to a response likely involving "harmful or destructive physical force" or other "conduct offensive to public order." *See Violent*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/violent [https://perma.cc/97HX-Z5XP]; *Disorderly*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/disorderly [https://perma.cc/7CKU-W6SN]. *See generally State v. Malo*, 2020 UT 42, ¶ 22, 469 P.3d 982 (explaining that "the first step of statutory interpretation is to look to the plain language" (cleaned up)). In this way, the statute is targeted to encompass a disruptive reaction to incitement, not just "outward manifestations of fear" that an arachnophobic friend might display in response to receiving pictures of spiders.

¶32     Rickabaugh's second hypothetical posits that a college professor might email a student accusing the student of cheating

---

10. We also question whether the statute would capture a substantial amount of political or commercial emails because the statute excludes "communications that are not targeted at any specific individual." *See* Utah Code Ann. § 76-9-201(1)(b) (LexisNexis 2017).

on a test. In Rickabaugh's view, the professor could then be acting with "the specific intent of 'disrupting' the normal course of the student's electronic activity" by wanting "the student to read it and likely respond" and, further, the professor's allegation would be "insulting and challenging to the student" and would "likely provoke a 'disorderly response,' causing the student to panic out of anger or fear" and possibly causing the student to disrupt "other college officials' electronic communication by emailing them to address the allegation." As with the previous hypothetical, we are doubtful that section 76-9-201(2)(b) captures this scenario. The statute is directed toward a form of harassment that is "likely to provoke a *violent or disorderly* response," not responses that involve an individual panicking or merely emailing others. But even if we were persuaded that this scenario fell within the statute's scope, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *See United States v. Williams*, 553 U.S. 285, 303 (2008) (cleaned up).

¶33　In sum, reading subsection (2)(b), together with the specific intent requirement, we conclude that any possible overbreadth is not substantial. Accordingly, we conclude that section 76-9-201(2)(b) is not unconstitutionally overbroad on its face.

B.　As-Applied Overbreadth Challenge

¶34　Rickabaugh also asserts that the challenged subsections of Utah Code section 76-9-201 are overbroad as applied, arguing that they punish him for protected speech.[11] Largely because he

___

11. In challenging subsection (2)(a)(i), the repeated contact provision, Rickabaugh complains that the City used "multiple forms of 'contact,' to support the charges" against him, namely, the Lehi Link posts and his emails to the mayor. Because we need not and do not reach the merits of his challenge to

(continued…)

has not presented his as-applied constitutional challenge to subsection (2)(b) in a way that is sufficiently distinguishable from his facial challenge, we conclude that Rickabaugh has not carried his burden of persuasion. We therefore uphold subsection (2)(b) as applied to him.

¶35    A statute "may be unconstitutional either on its face or as applied to the facts of a given case." *Gillmor v. Summit County*, 2010 UT 69, ¶ 27, 246 P.3d 102 (cleaned up). A facial analysis of a statute differs from an as-applied analysis. "In asserting a facial challenge, a party avers that the statute is so constitutionally flawed that no set of circumstances exists under which the statute would be valid." *Id.* (cleaned up). By contrast, "in an as-applied challenge, a party concedes that the challenged statute may be facially constitutional, but argues that under the particular facts of the party's case, the statute was applied in an unconstitutional manner." *Id.* (cleaned up). Thus, an as-applied challenge to a statute involves showing that "there was something uniquely unconstitutional about the way in which the [statute was] applied" to the party. *See id.* ¶ 30. Put differently, an as-applied challenge typically requires the party "to show that, because of a particular quality or status of the [party] or the [party's] circumstances, the application of an *otherwise sound* statutory provision was unconstitutional." *Salt Lake County v. State*, 2020 UT 27, ¶ 43 n.57, 466 P.3d 158.

¶36    In purportedly challenging subsection (2)(b) as applied to him, Rickabaugh concedes that some of his messages "were

---

(…continued)

subsection (2)(a)(i), we do not fully address this complaint. We note, however, that the jury was instructed that the charge at issue was related specifically to harassment "occurring on or about January 26, 2018"—the date of the Facebook messages. And on appeal, Rickabaugh does not challenge the admission of the three emails to the mayor or the references to the Lehi Link posts.

offensive and likely caused anger and indignation," but he asserts that offensive words are still protected speech. He then argues that "it is entirely possible the jury equated the 'likely to provoke . . . a disorderly response' language with protected speech," particularly "where there was no standard in the statute to determine from what perspective, subjective or objective, this element should be determined." (Omission in original.) From this, Rickabaugh concludes that the jury "may have convicted [him] based on the subjective view of the victim, . . . who testified that he was highly offended."[12]

¶37 Rickabaugh's nominal as-applied argument is, in actuality, rooted in a facial challenge to subsection (2)(b). Even though Rickabaugh briefly mentions some facts of his case in relation to his as-applied challenge, his complaint's substance centers on the statute's "disorderly response" language and on his position that the statute is based on a subjective standard.[13] His substantive argument thus challenges the statute on its face. And he has not explained how, "under the particular facts of [his] case," the statute was unconstitutionally applied to him. *See Gillmor*, 2010 UT 69, ¶ 27. Indeed, he has not argued, let alone established, what was "uniquely unconstitutional about the way in which [subsection (2)(b) was] applied" to him. *See id.* ¶ 30. By not adequately articulating a distinction between his facial and as-applied challenges,[14] Rickabaugh has not provided sufficient

---

12. Rickabaugh has not argued that the evidence was insufficient to prove that his words were "likely to provoke a violent or disorderly response."

13. We have already rejected Rickabaugh's position that the statute requires a subjective assessment. *See supra* ¶ 26.

14. Although Rickabaugh invoked the term "as applied," the substance of Rickabaugh's overbreadth argument before the district court was similarly focused on his facial challenge. Perhaps because Rickabaugh did not specifically or

(continued…)

"reasoned analysis supported by citations to legal authority and the record" to show "why [he] should prevail on appeal." *See* Utah R. App. P. 24(a)(8). We therefore reject Rickabaugh's as-applied challenge to subsection (2)(b).

## II. Vagueness

¶38 Having rejected Rickabaugh's overbreadth challenge to subsection (2)(b) of the electronic communication harassment statute, we now turn to his vagueness challenge. Similar to his overbreadth arguments, Rickabaugh contends that the statute is unconstitutionally vague both on its face and as applied to him. We conclude that subsection (2)(b) as applied to Rickabaugh is not vague and that his vagueness challenge therefore fails.

¶39 "Vagueness questions are essentially procedural due process issues, i.e., whether the statute adequately notices the proscribed conduct." *State v. Frampton*, 737 P.2d 183, 191–92 (Utah 1987). Thus, "a statute is not unconstitutionally vague if it is sufficiently explicit to inform the ordinary reader what conduct is prohibited." *Id.* (cleaned up). To establish that a statute is unconstitutionally vague, "a defendant must demonstrate either (1) that the statute[] do[es] not provide the kind of notice that enables ordinary people to understand what conduct is prohibited, or (2) that the statute[] encourage[s] arbitrary and discriminatory enforcement." *State v. MacGuire*, 2004 UT 4, ¶ 13, 84 P.3d 1171 (cleaned up).

¶40 A defendant "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). This rule

---

(…continued)
meaningfully discuss the facts of this case in connection with his constitutional challenge, the district court did not treat the as-applied challenge differently from the facial challenge.

"makes no exception for conduct in the form of speech." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010). Under this rule, a "court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Village of Hoffman Estates*, 455 U.S. at 495.[15]

¶41　In arguing that subsection (2)(b) is vague as applied to him, Rickabaugh again focuses on the statute's supposed subjective standard. He claims that he did not know that Victim's mother had died shortly before he sent the message telling Victim that his "mom is the mother of a whore" and that Victim's "subjective experience" may have weighed heavily in the jury's decision to convict. He also claims that whether his messages were "insulting, taunting, or challenging" could have been based on "subjective factors" such as Victim's "position in the community."

¶42　In so arguing, Rickabaugh overlooks that the statute's "specific intent requirement significantly vitiates any claim that its purported vagueness could mislead a person of common intelligence into misunderstanding what is prohibited." *See Salt Lake City v. Lopez*, 935 P.2d 1259, 1265 (Utah Ct. App. 1997), *superseded by statute on other grounds as recognized by Baird v. Baird*, 2014 UT 08, 322 P.3d 728; *see also Village of Hoffman Estates*,

---

15. One court has questioned whether *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), applies to a facial challenge that "a law is so vague as to subject the challenger itself to standardless enforcement discretion." *See Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 314–15 (D.C. Cir. 2017). But Rickabaugh has given us no reason to doubt that *Humanitarian Law Project* applies to his challenge, which involves complaints about both notice and enforcement. The State, in its amicus brief, asserted that this court should examine Rickabaugh's conduct first based on *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982). Rickabaugh did not dispute the State's assertion in his reply brief.

455 U.S. at 499 ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."). The statute required that Rickabaugh act with "intent to intimidate, abuse, threaten, harass, frighten, or disrupt the electronic communications of another." *See* Utah Code Ann. § 76-9-201(2) (LexisNexis 2017). Thus, the statute's focus is not placed on Victim's subjective reaction but on Rickabaugh's intent and Victim's likely response. And Rickabaugh does not explain how this intent requirement coupled with subsection (2)(b)'s requirement that he "insult[], taunt[], or challenge[] the recipient . . . in a manner likely to provoke a violent or disorderly response" was insufficient to put him on notice that the statute prohibited his conduct. *Id.* § 76-9-201(2)(b).[16]

¶43 Furthermore, Rickabaugh's conduct is unambiguously proscribed under Utah Code section 76-9-201(2)(b). Rickabaugh made direct contact with Victim through electronic communication when he sent Victim at least thirty direct messages via Facebook. In these messages, Rickabaugh told Victim that he was a "bitch" and a "cunt," called his mother "the mother of a whore," and warned that his wife would leave him. Rickabaugh also told Victim, "NOW YOU ARE #1 ON MY LIST

---

16. Rickabaugh's claim that application of subsection (2)(b) depends on a subjective assessment of the victim's reaction and is thus "given to discriminatory enforcement" fails for the same reason. Further, a "statute does not encourage arbitrary enforcement simply because it allows prosecutors the 'traditional prosecutorial discretion' afforded them under nearly all criminal statutes in the Utah Code 'in determining what charges to pursue' and against whom." *State v. Rashid*, 2021 UT App 17, ¶ 27 (quoting *State v. Angilau*, 2011 UT 3, ¶ 28, 245 P.3d 745). "[U]se of that discretion . . . does not amount to arbitrary enforcement[] [if] it [is] . . . not 'based on classifications of race, national origin, sex, religion, etc.'" *Id.* (quoting *State v. Carter*, 578 P.2d 1275, 1277 (Utah 1978)).

OF PEOPLE TO DESTROY!" and suggested that he would go "TO THE NEXT LEVEL OF CUNT SMASHING!" These vulgar and offensive messages were "insults, taunts, or challenges" that were "likely to provoke a violent or disorderly response" within the meaning of the statute. *See id.* And Rickabaugh's threats to "destroy" and "smash" Victim demonstrated his intent to "intimidate, abuse, threaten, harass, [or] frighten" Victim. *See id.* Because the statute clearly proscribed Rickabaugh's conduct, he cannot complain that it is vague as to others. *See Village of Hoffman Estates*, 455 U.S. at 495. We therefore reject his vagueness challenge.

## CONCLUSION

¶44    We are not persuaded that the electronic communication harassment statute is unconstitutionally overbroad or vague. Accordingly, we affirm Rickabaugh's conviction.

————————